Danforth, Davis &. Co. v. Carter and May.

## DANFORTH, DAVIS & CO. *v.* CARTER AND MAY.

Where a question of fact is tried by the court and its decision thereon reduced to writing, under section 1793 of the Code, the appellate court may review the finding of the court on such question, as on a motion for a new trial, on the ground that the verdict is against the evidence, but in order to warrant such review, all the evidence on which the finding of the court below was had, must be before the appellate court.

A partner, who in an action against the partnership, or against the surviving members of a partnership, to recover a debt due by such partnership, permits a judgment to go against him for the debt and costs, becomes a competent witness, to prove that a co-defendant was not a member of such copartnership.

In such a case, the interest of the witness is against the party calling him; and the plaintiff cannot debar the testimony of the witness, by refusing to take the judgment offered.

Where in an action against two persons, as surviving members of a copartnership, the defendants, on the trial, offered to permit the plaintiffs to take judgment for the amount of their claims and costs, against one of said defendants, and thereupon claimed the right to read the deposition of such defendant in evidence, for the purpose of proving that the other defendant was not a member of such copartnership, which judgment the plaintiffs refused to receive, and the deposition was rejected; *Held*, That the plaintiff could not refuse to take the judgment, and that the evidence was admissible.

In an action against a copartnership by a creditor, the declarations of the partners, made while the firm was in existence, and before any difficulty arose, are admissible in evidence to show that one of the persons sought to be charged, was not a member of such partnership.

Such declarations to be admissible as evidence, must have been made before difficulty arose, whilst the business was going on, and as imparting information to persons with whom the firm dealt, and the world.

The admissibility of the declarations of a partner, showing who are members of the firm, does not depend upon the fact that such partner has deceased; but are receivable, upon the ground, that as the plaintiff must recover against all the defendants or none, and as such partner, if called to testify in person, would be testifying *in presenti*, he would be interested to defeat the suit.

The testimony of a witness as to whom he gave credit, as members of a copartnership, when selling goods to the firm, is but the opinion of the witness, and is not receivable in evidence.

The declarations of a party sought to be charged as a partner, are not admissible to prove that he was not a member of such copartnership.

The common effect of an appeal, where a supersedeas bond is filed, is to suspend the effect or operation of the judgment appealed from.

Where a decision of the District Court, dissolving an attachment, is appealed

Danforth, Davis & Co. v. Carter and May.

from in due time, and a supersedeas bond filed, the decision of the court is suspended; and if reversed, the property seized under the attachment, is still held by the writ.

Where property was seized by attachment, some of which being perishable, was sold by the sheriff, and the proceeds thereof paid over to the clerk of the District Court; and where at the June term, 1855, of the District Court, and on the 2d day of the month, the attachment on motion of defendant, was dissolved without any order respecting the property attached, upon which the sheriff delivered the attached property remaining in his hands, and the clerk paid over the proceeds of the property sold, to the defendant's attorney, "taking an accountable receipt;" and where on the 6th day of June, and during the same term, the plaintiff appealed from the judgment of the court dissolving the attachment, and filed a supersedeas bond, which judgment was reversed by the Supreme Court; and where at the next term of the District Court after such reversal, the plaintiff obtained judgment against the defendant, on his claim, and thereupon moved for a judgment against the property attached, and for a special execution, which motion was overruled; *Held,* That the property attached was still liable, and that the court erred in overruling the motion for a judgment against the property, and for a special execution.

*Appeal from the Dubuque District Court.*

THIS is an action against John O. Carter and Samuel E. May, as surviving partners of the firm of A. W. Carter & Co., on two promissory notes executed in the name of the copartnership—A. W. Carter having deceased before the commencement of the suit. May was conceded to be a partner. John O. Carter denied that he was a member of the firm. Judgment was rendered for the plaintiffs. Both parties appeal. The facts necessary to an understanding of the cause, and the questions decided, are fully stated in the opinion of the court.

*Smith, McKinlay & Poor,* for the plaintiffs.

*Clark & Bissell,* for the defendants.

WOODWARD, J.—The cause was tried by the court, under section 1772 of the Code, and under section 1793, the decision of the court is given in writing, showing the facts found and the law adjudicated. It is upon this, the questions of the case principally arise.

Danforth, Davis & Co. v. Carter and May.

The counsel, however, appear to regard the appeal as reaching, and bringing up for review, the finding of the court on the matters of fact. This may be admissible, regarding it as in the nature of a review of the verdict of a jury, upon a motion for a new trial. But in such case, all the evidence must be before this court. In the present cause, the deposition, (or other testimony,) of May, is wanting; and as we hold his testimony admissible, we cannot proceed to an adjudication upon this branch of the case. And if this testimony were before us, it would not be suitable for us to review the finding of the court upon the facts, because several questions are made as to the admissibility of testimony, or the competency of witnesses, an adjudication upon which would render it proper to remand the cause, whatever might be our opinion of the former finding. The present case is an illustration of the purpose of causing the decision of the court, as to the facts found, and the law held applicable, to be given in writing. There are other questions in the cause than, that whether J. O. Carter was a partner. These others are questions of law, and are properly brought up.

The first of these questions is, whether May was competent as a witness, being called by the said Carter to prove that the latter was not a partner in the firm of A. W. Carter & Co. The deposition of May appears to have been taken, but is not among the papers, so that we are not able to refer to any special matter of evidence, as given by him, but will simply assume, that he testifies to the fact, that Carter was not a partner, or facts tending to show this. It appears, from a bill of exceptions, that on the trial the defendants proposed to permit the plaintiffs to take judgment upon their claims against the said May, as surviving partner of the firm of A. W. Carter & Co., and thereupon claimed the right to read his deposition in evidence. The plaintiffs refused to take such judgment.

There was no controversy about the amount of plaintiffs' claim, nor about May being a partner. May is a defendant, not only in fact, but is so on the record. He is liable for

Danforth, Davis & Co. v. Carter and May.

costs, and for the debt, and he would be liable to Carter for contribution, if the latter paid. On the other hand, he is called by Carter, and it will be seen that May, in giving judgment, takes the debt and costs upon himself at once, and absolutely, so that they are not subject to any contingency arising from his testimony, and he is interested to throw a part of the burden upon another—upon Carter. It would seem, therefore, that he has no interest, except that which is against the party calling him. He gives judgment, and that is all the plaintiff can have as to him, in any event. But the plaintiff may say, he has a right to his judgment against both. He has this right, if the facts and truth give it to him; and the only question is, whether this is a proper method of getting at the facts.

But, again; the plaintiff may say, that his action is against the defendants jointly, and that if he fails to obtain judgment against both, he can have it against neither. Is not this objection answered by May giving judgment against himself? He cannot make the objection, and the record would show the proper matter to estop him; and if the plaintiff succeeded, notwithstanding May's testimony, in obtaining verdict and judgment against Carter, then the objection would have no place. The objections arising from interest, therefore, and the technical one relating to the plaintiff's rights, seem to be obviated, and the question becomes simply this, whether he is incompetent merely as being a party to the record. The being thus a party, is usually put as the criterion; for it is rare that one is a party, without being in some manner or degree interested. The case presents an instance out of the range of all common precedent. But if a case can be framed, where a party to the record has absolutely no interest, or where it is all against the party calling him, why should he not be permitted to testify? When May offered to give judgment against himself, he settled all the ordinary questions of interest, save that point in which his interest was against the party calling him, and of this, the latter takes the chance upon his own shoulders.

This subject is discussed fully in the American note to

*Bent* v. *Baker,* 2 Smith's L. Ca. 85. The tendency in the latter times has been, in doubtful cases, to refer the objection to the credit, rather than the competency, of a witness, and not to exclude the light, unless there is a necessity for it. After giving due consideration to the thoughts suggested in the above note, we come to the conclusion, that judgment should have been rendered against May, and that then he would become a competent witness. It appears to this court, that the plaintiffs cannot debar the testimony of May, by refusing to take the judgment offered. The point is very considerably similar to that in *Bent* v. *Baker,* in relation to which Lord KENYON makes the remark: "Now, the defendant below, and the witness, offered that the bill should be dismissed as to them at their own costs, which, however, was refused; but after such refusal, neither in justice, nor common sense, can we suffer those parties to make the objection." 3 T. R. 27; 2 Smith's L. Ca. 74 [45]. The foregoing remarks are made with a view to the actual position of May, and to the apparent and presumptive interest which he has, or may have, arising from such position, but they are not intended to reach all possible matter of interest which might be shown. If a showing were made of some special interest, outside of the circumstances alluded to, he might still be held incompetent.

There is another class of objections made in this cause. The plaintiffs moved to reject the depositions of Wheelock, Pecker, White, and Cyrus L. Carter, at least that part of each of them, which goes to show who were partners in the firm of A. W. Carter & Co., upon the common ground, that the information they give, is derived from the persons supposed to have been partners, that is, from A. W. Carter, John O. Carter and May. This objection is aimed at those parts of the depositions which tend to show, by the declarations of the partners, that John O. was not a partner. This is one of those questions, the answer to which is variable, dependent upon the position of the cause, and the relation of the parties. If there were a controversy among the partners, the declarations of none of them could be

given on the side of their interest, upon the question who were, or who were not partners. But here is the case of creditors suing a firm for the recovery of their debts. Here the declarations of a party charged cannot be received to prove that he was not a partner, whilst they would be competent to show that he was. On the other hand, the testimony of the other partners is not receivable to make him one of them. John O. Carter's declarations are good to prove him one of the firm, but not to show the contrary, unless, possibly, under some peculiar circumstances. But why should not the declarations of the other partners, made whilst the firm was going on smoothly, before any question or difficulty arose, be receivable to show that one was not a partner? Take, for instance, the representations of A. W. Carter, when in Boston, purchasing goods, and when he is asked who constituted the firm which wishes to purchase goods and obtain a credit. It is true that his representation as to who were interested, would not bind those he named, though it would himself, but would they not be, at least, competent to show who were not interested?

If these declarations are not admissible, the position of a clerk may be a dangerous one. You can prove acts enough upon him every day, to make him a partner, and unless he has a written contract of employment, he is helpless; and is not even that contract itself, a declaration of the partners, or some of them? But even if such declarations of partners are admissible, it does not follow that the partner himself, as A. W. Carter, or May, could personally be a witness; for the foregoing remarks refer to past declarations, made before a question arose, and under indifferent circumstances; and further, as the plaintiffs must recover against all the defendants, or none, and as such partner, witness would be testifying *in presenti*, he would be interested to defeat the suit. This consideration would exclude May's deposition, did he not offer the plaintiffs a judgment, and thus obviate all these objections, by taking the debt, cost and all, upon himself.

Much might be said upon this subject, but time does not permit extended remarks. It is the opinion of the court,

that the declarations of A. W. Carter, made before difficulty arose, and under indifferent circumstances, are receivable. But these questions depend so much upon the actual relations of the parties, that no general proposition, farther than above stated, can be laid down. The admissibility of this testimony does not depend upon the fact, that Carter is dead, for those of May, also, would be equally receivable, unless upon the ground that the party makes him a witness. There are cases, such as that of an agent, when one may give his declarations, or may make him a witness. Whether May stands in such a position, that this may be done in his case, we do not determine; but it is sufficient to say, that both his declarations and his deposition cannot be received, and that the other defendant, having made him a witness, cannot make use of so much of the other depositions as relate to his declarations.

The testimony of Pecker, upon the matter as to whom he gave credit, as members of the firm, when he sold goods to them, strictly considered, is not receivable. It is giving his opinion only. The leading objection to the deposition of Cyrus L. Carter, and of White, is of the same nature with those above considered. The declarations of Carter are not admissible, to show that he was not a partner, and so far the objection should be sustained; but those of the other members, made under the proper circumstances, as before qualified, may be received. The objections to Pecker's deposition, the one being to the matter to whom he gave credit, so far as this is concerned, the ruling was right. The other was to the declarations of A. W. Carter and of May, the ruling on which we think was erroneous. The same exceptions taken to the depositions of C. L. Carter and of White, were sustained, in which we think there was error, so far as regards the declarations of A. W. Carter. The case of May, is distinguished from that of the said A. W., in that May is made a witness.

It is to be remembered, that so far as interest is to be looked at, this is against the party offering the declarations, and the declarations are against the (present) interest of those

making them ; and principally, that these declarations are to be regarded as constituting a part of the *res gestæ*. They were made, (or to be admissible, must be made,) before difficulty arose, whilst the business was going on, and as informing persons with whom they dealt, and the world, who did and who did not compose the firm. See the note to *Bent* v. *Baker*, 2 Smith's L. Ca. 115 *et seq.*

Another branch of this case relates to the attachment. The question is as follows : A certain amount of groceries and other property, had been attached. A part of the property being sold as perishable, the sheriff paid the amount thereof, being $404, to the clerk, under §§ 1881 and 1882 of the Code. At the June term, 1855, in the District Court, the defendants moved, that the attachment be dissolved or quashed. This motion was granted, and the attachment was set aside, without any order respecting the property. This was on the second day of June, and on the sixth, during the same term, the plaintiff appealed from this decision of the court, and filed a supersedeas bond. The judgment of the District Court, quashing the attachment, was reversed. At the following term of that court, judgment in the principal case being rendered in favor of the plaintiffs, they moved for a judgment against the property attached, and for a special execution. This motion was overruled. It appears that on the decision of the court setting aside the attachment, and before the appeal was taken, the sheriff delivered up the attached property remaining in his hands, and the clerk paid over the money which was in his hands, to the defendant's attorney, " taking an accountable receipt therefor." The plaintiffs excepted to the decision of the court, in refusing to render a judgment against the property, and to order a special execution, and appealed from the same.

The question now is, whether the attachment still holds the property, the judgment of the court dissolving it, being reversed. We believe that the only consistent decision is, that it still holds. This court has held in this and other cases, that an appeal lies from a judgment of the court, dismissing an attachment. The common effect of an appeal is

to suspend the effect or operation of the judgment appealed from, if a supersedeas bond is filed, as required by law. What other object can there be in an appeal, in such a case as the present? And what exempts a judgment on an attachment from the ordinary effect of the appeal? It would seem, upon reason, that an appeal should save this, as well as any other part of a cause.

What has been decided which negatives this idea? We will notice such cases as we have been able to see.

*Clapp* v. *Bell,* 4 Mass. 99. Judgment for defendant, and plaintiff prosecutes a writ of review. The case is short and unsatisfactory, but the review seems to be considered as an independent proceeding. The court appear to recognize the thought, that an appeal saves the attachment.

*Otis* v. *Warren,* 16 M. 53. A writ of error from the Supreme Court of United States to Supreme Court of Massachusetts, releases an attachment. This is placed upon the ground, that the law requires that security be given, which, says the court, "is a substitute for any which before existed."

*Danielson* v. *Andrews,* 1 Pick. 156. An increase of the *ad damnum,* releases the attachment.

*Hill* v. *Hunnewell,* 1 Pick. 192. A reference of the cause and of all demands (between the parties) dissolves it. This case is sometimes referred to, to show that a reference of the cause would destroy the lien of attachment. But such is not the case. This effect is only when the reference is of all demands. JACKSON, J., remarks that, in order to save an attachment, it was usual for parties to enter into a reference of the action, and of all demands which the defendant has against the plaintiff. This is the view taken of the case in *Mooney* v. *Kavanagh,* 4 Greenl. 277, where it is put distinctly upon the ground of the reference of all demands; and the court say, that if it is desired to avoid this effect, the reference must be limited to the action, or to that and all demands of the defendant, against the plaintiff. This doctrine has for its base the idea, that such a reference of all demands, (thus including the plaintiffs,) is equivalent to filing a count for a new demand or cause of action, as in

*Willis* v. *Crooker*, 1 Pick. 204, or to an increase of the *ad damnum*, as in *Danielson* v. *Andrews*, 1 Pick. 156.

*Bagley* v. *White*, 4 Pick. 395, and *Dunklee* v. *Fales*, 5 N. H. 527, hold possession a requisite to an attachment of personalty.

In *Brown* v. *Harris*, 2 G. Greene, 505, the attaching plaintiff was nonsuited on the 2d November. On the 7th November, he filed an affidavit to have the nonsuit set aside, which was done. Held, that the attachment was gone. In this case, the cause had been terminated, but was reinstated. By an appeal, it is continued on in its natural course. But though we may assent to the result in *Brown* v. *Harris*, yet the reasoning of the case is unsatisfactory and inconclusive. It simply asserts the supposed rule of law.

*Bowman* v. *Stark*, 6 N. H. 459.   Attachment is not dissolved by the death of the defendant.

*Hackett* v. *Pickering*, 5 N. H. 19.   Attachment of goods not *ipso facto* dissolved, by lapse of thirty days after the term, when the defendant was defaulted, though no continuance was ordered. The court might, in its discretion, order the case brought forward at the next term, in order to save the attachment.

*Miller* v. *Clark*, 8 Pick. 413.   Filing a new count for the same cause, does not affect the attachment.

Some other cases, sometimes cited on the question, do not aid in its solution. Such are found in 3 Fairf. 241 ; 8 Pick. 419. We have not been able to see 2 Aik. 299 ; 7 Conn. 271 ; 1 Sto. 601.

When the question bears upon the relations of third persons, it is manifest that the attachment may be gone, when it would not be, if viewed with reference to the two parties alone.

From the nature of the case, and from the fact that an appeal causes the judgment appealed from to cease having any effect, (5 M. 376,) it would seem that the attachment must be preserved, if the appeal is taken in due time. And this view is sustained by the case of *Suydam* v. *Huggeford*, 23 Pick. 465. In this case, the court says : "But a judg-

ment against the plaintiff, puts an end to all attachments, unless appealed from. In case of an appeal, they (trustees) must necessarily follow the cause, because in legal effect such appeal, if duly prosecuted, is regarded as in the nature of a continuance of the proceedings."

We are satisfied that, on both reason and authority, the appeal holds the attachment. But the question naturally arises, whether the attachment is to hold indefinitely, and wait to see if the party intends to appeal? By no means. There is a natural course of thought which grows out of the state of the case, and governs it. The judgment is final, unless appealed from, and the officer cannot continue to hold the property by his own authority; but the cause must be placed in such a position that the law will hold it. During the term, the records and judgments are under the control of the court, and may be reversed and set aside. If the defendant desires an immediate return of the property, he should, with notice to the other party, move the court for such return. On the other hand, the plaintiff must take his appeal immediately, in the legal sense. He cannot wait the year allowed by the law in ordinary cases; for then, in the meantime, there is nothing to hold the property. It is as when a party is hastened to perfect his appeal, by the issuance of an execution. The law gives him a year, but intervening circumstances compel a more speedy action.

Theoretically, the appeal must be taken forthwith; practically, in a reasonable time. It cannot be an instantaneous thing, and if the redelivery of the property might be made instantaneous upon the decision, then the defendant or the officer, could, in every case, cut off an appeal. The law is intended to be reasonable. The defendant can move the court, as above suggested. Then the plaintiff must appeal during the term. This is reasonable; it makes the appeal a substantive thing, and preserves the rights of both parties.

In the cause at bar, the defendant obtained no order from the court, for the delivery of the property, and the plaintiff perfected his appeal, and filed a supersedeas bond, within four days, and during the term. He could do no more. He

was prompt, and did all that could be required; and we think he has saved his rights; that the appeal suspended the operation of the judgment; and that the property attached is still liable.   It should be remarked, that no question touching the rights of third persons arises here, and that the question is decided without reference to such.   .

The judgment of the District Court is reversed.