**FARMERS' BANK *v.* SALING.**

[54 Pac. 190]

EXAMINATION OF WITNESSES.—Where a party on cross-examination brings out matters not testified to on direct, he cannot complain of the witness being examined as to such matters on redirect.

EVIDENCE.—On an issue of the membership of a firm to which a loan had been made, there being two firms of the same name, testimony of the lender as to which one of the firms he understood he was lending the money to is admissible.

IDEM.—To prove defendant's membership in a firm, testimony that witnesses understood or believed defendant to be a member is admissible, where such witnesses state the facts from which they derive their understanding or belief, and such facts are proper for the consideration of the jury.

TRIAL—VALUE OF EVIDENCE.—Where a witness testifies to facts as of his own knowledge, and on cross-examination it appears that the sources of his knowledge are meager, his testimony will not be stricken out; its value being for the jury.

EXAMINATION OF WITNESSES.—A witness cannot on redirect examination be asked whether he had any reason to doubt that a specified defendant was a partner in the firm which executed the notes in suit, where there was nothing in the cross-examination to call out such a question.

EVIDENCE OF PARTNERSHIP.—Testimony that witness had left money on deposit with a firm on the faith and credit of defendant is inadmissible to prove defendant's membership in the firm.

IDEM.—To prove a person's membership in a firm, letterheads and sacks on which his name is printed as a firm member, used by such firm in its business at a date subsequent to the time of incurring the liability sued on, are admissible in corroboration of other independent evidence on that issue.

IDEM.—On an issue whether one of the defendants was a member of a firm which signed certain notes it was competent to offer in evidence the notes and letters dated some months later, but signed in the same handwriting and written on letterheads having the name of the defendant as one of the partners. The documents, being signed by the same person, are *prima facie* evidence that the firm whose name was signed to the note was the same firm whose names appear on the letterhead.

AMENDING PLEADINGS—DISCRETION.—A liberal practice prevails in Oregon regarding amendments to pleadings: thus, where action was brought on a note dated 9 Sept., 1892, and it developed on the trial that the date should have been 9 Sept., 1893, it was proper to allow the complaint to be amended, it being apparent that the defendants had not been misled. *Mendenhall* v. *Harrisburg Water Co.*, 27 Or. 38, explained, and *Cook* v. *Croisan*, 25 Or. 475, cited.

IMPEACHMENT.—For the purpose of depreciating the value of a witness' testimony it may be shown, on proper foundation, that the person has made out of court statements on the matter in question contradicting his evidence in court.

BANKS—NOTICE TO CASHIER.—Notice to the cashier of a bank is notice to the bank, in transactions conducted by him for it within the scope of his authority, regardless of his *bona fides* in conducting such transactions, where the bank adopts his acts.

From Umatilla :  STEPHEN A. LOWELL, Judge.

Action by the Farmers' Bank of Weston, Oregon, against I. E. Saling and others on two notes. The plaintiff had judgment from which I. E. Saling appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Messrs. Chas. H. Carter* and *J. H. Raley.*

For respondent there was a brief over the names of *Stillman & Pierce* and *Balleray & Hailey*, with an oral argument by *Messrs. John J. Balleray* and *A. D. Stillman.*

Mr. Justice Wolverton delivered the opinion of the court.

This is an action to recover upon two promissory notes,—one executed September 9, 1893, by Saling & Co. to the plaintiff for $2,500, and the other March 23, 1893, to Joseph Zigman for $565, and by him indorsed to plaintiff. It is alleged that, during the times named, I. E. Saling, Frank Saling, and P. A. Worthington were partners doing business under the firm name of Saling & Co. I. E. Saling, by separate answer, controverts the plaintiff's allegation that he was a partner of the concern; and upon this issue all the questions presented for our determination arise, except one involving the discretion of the court to allow an amendment of the complaint touching the date of one of the notes sued upon.

George A. Hartman, a witness for plaintiff, testified substantially that he was a director in the plaintiff bank; that he knew the members of the firm of Saling & Co. in 1891, 1892, 1893, and 1894, and that it was composed of I. E. Saling, Frank Saling, and P. A. Worthington. On cross-examination he said he knew such to be the fact because he had some business with them, and their stationery and billheads indicated as much. The examination developed a contention that there were two firms doing business in Weston, — one under the name of Saling & Co., and engaged in merchandising, composed of Frank Saling and P. A. Worthington, and the other doing a milling business composed of I. E. Saling, Frank Saling, and P. A. Worthington, but it was questioned whether it did business under the style of the Weston

Roller Mills, or Saling & Co.   On redirect examination
the witness was asked the following question :  "Three,
four, or five years ago, when this money was loaned,
did you have any knowledge that there was any distinc-
tion between the firms ?"   To this question there was
an objection, which was overruled, and the defendant
answered, " I did not."   But, upon the question being
reread, the witness answered further :  " Yes ;  I think
there was.   I want to correct that answer, I did think
at that time that there was a difference."   Immediately
following which he was asked :  " Whom did you under-
stand you were loaning the money to ? " to which he
answered, over objections, " Saling & Co.,— I. E. Sal-
ing, P. A. Worthingion, and Frank Saling." These
constitute the second and third assignments of error.
As it concerns the second, it was proper for the plaintiff
to make the inquiry on the redirect examination, as the
defendant had on cross-examination elicited the fact that
there were possibly two firms doing business as Saling &
Co., but composed of individuals not the same.   The ef-
fect was to trace the witness' knowlege of their existence
back to the date of the loans, and of this defendant can-
not complain, as the subject was a matter which he him-
self elicited.

The question upon which the third assignment of error
is based follows quite naturally from the one discussed.
After the possible existence of the two firms had been
mooted, it was pertinent evidence to go to the jury
touching the identity of the firm to which the money was
loaned.   As it respects the form of the question, "Whom
did you understand you were loaning the money to ?" it
would seem to be unobjectionable.   The inquirer was
seeking for the knowledge of the witness, and used the
word " understand " for the ascertainment of that fact.
It was not a question of opinion, common rumor, or rep-

utation, but of knowledge, and the language employed was not inappropriate to the purpose.

Subsequently George Proebstel was called as a witness for plaintiff. He testified, in substance, that he was a director of the plaintiff bank, and was such director at the time the money was loaned to Saling & Co. The following colloquy then occurred : "Q. Do you know—and, if so, state—who composed the members of the firm? By counsel for defense : Q. First, do you know who comprised the members? A. I think I do ; I have good reason to believe that I know. Q. You believe you know? A. Yes, sir." Objection was then interposed to the witness answering touching the membership, but, being overruled, he stated that P. A. Worthington, I. E. Saling, and Frank Saling composed the firm. In this connection we may consider the eleventh, twelfth, and thirteenth assignments. I. J. Price, as a witness for plaintiff, testified that he was a director of the bank, and then as follows : " Q. State, if you know, who composed the members of that firm. A. I could not positively state. Q. Have you any reason for knowing? A. Nothing, only from observation,—the actions of the parties. Q. Have you ever seen any letterheads or billheads that indicated who the partners were? A. Yes, sir ; I have seen a good many letterheads and billheads. Q. Have you done business with the concern? A. Yes, sir. Q. Now, from your observation, and the letterheads and billheads which you have seen, who do you say were the partners in the concern,—and also taking into consideration the business transactions which you have had with the concern? A. Well, according to the billheads, it would be pretty hard for a man to tell who was. Sometimes it is Frank Saling, P. A. Worthington, Bullfinch, and sometimes it is Press Worthington or P. A. Worthington, Frank Saling, and I. E. Saling, and Frank

Saling and P. A. Worthington. Q. Well, have you any idea at all as to who the partners were in that concern? From your transactions with them, and from what you have seen of the letterheads and billheads that you have seen, and from their conduct in and about the business, have you any knowledge as to who the partners are? A. Not positive. Q. I don't ask you to swear positively. A. Well, I always understood— My understanding of the business was that Mr. I. E. Saling was the head of the firm.''

It is insisted that these questions call for the belief or opinion of the witnesses, and not for their knowledge, and were therefore incompetent to prove the fact of partnership. It may be premised that a partnership association is proven as any other fact. If not susceptible of direct proof, it may be established by circumstances which may lead to a belief of the existence, such as participation in the profits, the acts of individuals in the apparent discharge of firm business, advertisements purporting to contain the individual names composing the firm, with knowledge of the party sought to be charged, and the like; and especially is this true where it is incumbent upon a third party to affirm the existence of such relationship. As a general rule, common rumor or reputation, and the belief or opinion of witnesses based upon hearsay, is not competent evidence to establish the fact: *Hicks* v. *Cram*, 17 Vt. 449 ; 2 Rice on Evidence, § 451 ; *Adams* v. *Morrison*, 113 N. Y. 152 (20 N. E. 829). There is nothing in the examination of either of these witnesses to indicate that general reputation or common rumor touching the membership of the concern was sought for. The witness Proebstel believed that he knew, while Price was asked, from his observation, and the billheads and letterheads which he had seen, taking into consideration the business transactions which he

had with the concern, to state who were the partners. And in neither instance was there any call for belief or opinion founded upon hearsay. The witness Proebstel was permitted to name the members, but the source of his knowledge or the foundation for his belief were proper subjects of test by cross-examination. It was disclosed that he had some knowledge, though cursory and not very convincing, of the history of the firm doing business under the name of Saling & Co.; but there was enough to go to the jury and it was for them to determine, under proper instructions, whether he had any real knowledge of its true membership, notwithstanding his assertion that he knew, or believed he knew, who the partners were. Price frankly stated that he could not answer positively touching the membership, but he was pressed until he finally stated that his understanding was that I. E. Saling was the head of the firm. It is pertinent to say here that some flour sacks and letterheads had been previously offered in evidence; the sacks having upon them, "The Weston Roller Mills. Saling & Co., Proprietors"; and the letterheads, the names "I. E. Saling," "Frank Saling," and "P. A. Worthington," in addition. The deduction which the witness was pressed to make from his observations is the result which it was the duty of the jury to declare from the witness' narration of such observations. Although there is some authority for the course pursued, it is not to be commended.

In *Seekell* v. *Fletcher*, 53 Iowa, 330 ( 5 N. W. 200 ), the witness was asked the following question : "Now I will get you to state again, from the manner of their dealings with you prior to the execution of this note, whether or not it was understood by you at the time that they were partners or not." And he was permitted to answer, and was sustained by the supreme court; ROTH-

ROCK, J., saying : "It does not appear that this testimony was in the nature of an opinion.   It is rather the expression of a belief upon the part of the plaintiff that there was a partnership at and before the date of the note.   If the defendant Vandusen's acts and representations were such as to induce the plaintiff, as a reasonably prudent man, to believe his statements that he was a partner with Fletcher, we know of no reason why the plaintiff should not be allowed to state to the jury that it was in that belief he acted when he made the sale and took the note ; and it was then for the jury to say whether the facts justified his belief.   The word ' understood ' may not have been, and probably was not, the best word that could have been used to express the idea sought ; but the error, if any, is too inconsiderable to warrant a reversal upon that ground."   So it is here ; if there was error in permitting the witness to answer the question in the form in which it was put to him, it was surely harmless, considering the absolute frankness with which he answered, and the utmost fairness with which he disclosed the information he possessed, and stated the nature of his belief.   It is very apparent that the jury could not have been misled.   The understanding or belief — whatever it may be termed — was not based upon hearsay, or upon evidence within itself not admissible, but upon matters proper of themselves to go to the jury. Proebstel stated his knowledge with more positiveness, but his cross-examination developed the fact that he had less real knowledge touching the matter than Price ; yet it was not prejudicial error to submit the whole to the jury, as they were the proper judges of the weight of the testimony after it had been tested by the cross-examination.

The twenty-seventh assignment illustrates very well

what we have said touching the province of the jury to determine from all the witness' testimony what credit should be given him. Charles M. Pierce testified that he knew who composed the firm of Saling & Co., and that it was I. E. Saling, P. A. Worthington, and Frank Saling; but on cross-examination it must be admitted that his sources of absolute knowledge were meager, and when it was concluded the appellant moved the court to take the whole testimony from the jury for the reason that it appeared the witness was not testifying from his knowledge, but was giving conclusions which it was the province of the jury to determine; and the learned trial judge very properly said, in overruling the motion, that the object of the cross-examination was to show the value of the direct testimony, which the jury must determine.

But upon redirect examination, which is comprehended by the fourteenth assignment, it was more than harmless error to permit plaintiff's counsel to ask the witness Price whether he had any reason to doubt that I. E. Saling was a partner in the concern. There was nothing in the cross-examination to provoke such a question, and it was the equivalent of saying in a short-hand way that the matter was of such universal notoriety that everybody so understood it. *Hichs* v. *Cram*, 17 Vt. 449.

Again, witness was asked on whose faith and credit he left certain money on deposit with the firm, to which he answered, " Mr. I. E. Saling." The same question, in purport, met with the disapproval of the court in *Danforth* v. *Carter*, 4 Iowa, 230, 236. This latter exception is saved by the fifteenth and sixteenth assignments.

The twenty-eighth and twenty-ninth assignments are based upon the following questions propounded to Charles M. Pierce upon a redirect examination, viz. : " Is it not a fact that everybody that talked about the con-

cern talked about I. E. Saling?" and other questions of similar import. This information, however, was not sought to prove a substantive fact for the purpose of establishing plaintiff's cause, as was the case under the fourteenth assignment, but it appears to have been super-induced by the cross-examination, whereby it was elicited that witness had heard a good many people say on the outside that I. E. Saling was a member of the firm, and for that reason defendant ought not to complain.

Assignment 5 arises upon the introduction of the sacks and billheads in evidence, containing the advertisements, "Western Roller Mills," and "Saling & Co., Proprietors," etc., heretofore referred to; and the objection is placed upon the ground that they were not shown to have been in use at the time of the execution of the notes in question, but at a subsequent date. The letterheads appear, from letters written under them, to have been in use some six months later, but it does not appear so definitely as it respects the sacks. However this may be, there was other testimony tending to show the existence of the firm composed of the specified membership at the date of the execution of the notes; and it was not improper to admit the sacks and letter and billheads as corroborative thereof, notwithstanding their use by the firm could not be traced to the exact date of the transaction. See 2 Bates, Partn. § 1159; *Fleshman* v. *Collier*, 47 Ga. 253; *Gowan* v. *Jackson*, 20 Johns. 176.

Assignments 21, 24, and 25 refer to the admission of Exhibits C, D, E, F, G, and H in evidence over defendant's objection. D and E are the notes sued on, and C, F, G, and H are letters written six months or more later upon letter paper containing the letterhead advertisement above referred to, signed "Saling & Co." The signature to the notes and the signature to these letters appear to have been written by the same person,— proba-

bly by Worthington. The evidence was entitled to some weight to show that the firm which executed the notes was the same as the one indicated by the letterheads, and it created such a *prima facie* case of identity of firms as to require an explanation from the defendant. If, as a matter of fact, there were two firms doing business under the same name, and P. A. Worthington was a member of both, defendant was entitled to show it, but the evidence objected to was nevertheless pertinent for the purpose for which it was offered. Another objection was urged to the introduction of Exhibit E, which will be disposed of in the next assignment.

Assignments thirty-one and thirty-two arise, the first on defendant's motion for a nonsuit when plaintiff had rested, and the second upon the order allowing plaintiff's motion to amend the complaint as to the date of the execution of the $2,500 note so as to change it from September 9, 1892, to September 9, 1893. Worthington, when called as a witness for defendant, produced a note calling for $2,500, bearing date September 9, 1892, which was shown, by a stamp impressed upon it, to have been paid; and thereupon plaintiff asked leave to amend, assigning as a reason therefor that the pleader had made a mistake in the date of the note, and leave was accordingly granted. So far as the nonsuit is concerned, it is apparent from what has already been said that there was evidence produced by the plaintiff pertinent to go to the jury touching the individual members composing the partnership, which presented a controversy in the trial. The motion therefor was therefore properly overruled, nor was there error in permitting the amendment complained of. It could have wrought no injury or inconvenience to the defendant, because he was perfectly aware of the exact situation from the very beginning; and besides the trial had not closed, so that any evidence

pertinent to the changed condition of the pleadings might
have been produced.   The note intended to have been
sued on was a renewal of the one stamped " Paid," and
produced by Worthington, and was an exact counterpart
of it, except as to date; and in that there was just a
year's difference.

It is urged that, because there once existed a note
exactly suited to the description of the note contained in
the complaint, it was improper to allow an amendment
so as to describe another and an entirely different note;
but we are unable to see why such a condition presents
a barrier to the correction of a palpable mistake.   There
was a very material difference in the notes; one being
cancelled, and the other an existing obligation.   The
mistake was concerning the outstanding obligation, and
it can make no difference that the description intended
to designate it as the one sued on happened to fit some
other obligation, whether cancelled or not.   The defend-
ant not being misled to his prejudice, the amendment
was within the discretion of the court.   Courts are
always liberal in allowing amendments to pleadings in
the furtherance of justice,— a practice so familiar that it
is unnecessary to cite authorities in its support.   The
amendment was resisted upon the authority of *Menden-
hall* v. *Water Co.*, 27 Or. 38 (39 Pac. 399); it being con-
tended that the trial court was without authority to allow
it.   The case is in point, but it only decides that in that
particular instance there was no abuse of discretion in
not permitting the defendant to amend after his evidence
had gone in under objections before a referee.   What
was said respecting the court's authority to allow the
amendment was through inadvertence, and is not con-
trolling, as the question considered was not one of power
in the court to make it, but one purely of discretion, and
whether there had been an abuse of it.   In this view the

case is authority in support of the amendment.    See, also, *Cook* v. *Croisan*, 25 Or. 475 (36 Pac. 532).

Assignment forty-six has reference to an interrogatory put to Worthington touching a supposed conversation he had with one F. M. Anderson for the purpose of laying the foundation for the witness' impeachment. It is objected that the attempted impeachment was upon an immaterial matter, and it was suggested that what witness might have said concerning the partnership could not bind the defendant I. E. Saling, unless he was present and heard the conversation ; but the witness had testified that Saling was not a member of the firm, and, if he had made statements out of court of contradictory tenor, the matter was both relevant and pertinent, not for the purpose of binding Saling, but for the impeachment of the witness by showing contradictory statements.

The forty-seventh assignment is based upon the objection to a question put to the defendant's witness Worthington upon cross-examination, as follows : " What did you do with that land "? It had been developed that Saling & Co. had disposed of their stock of goods and had taken some land in exchange ; and the question concerned this land. It was not without the sound discretion of the court to allow the question on cross-examination, and surely it was perfectly harmless in any event.

The sixty-third assignment concerns the following instruction given by the court, viz. : " I instruct you that notice to the cashier of the bank is notice to the bank, in transactions conducted by such cashier, acting in good faith for the bank, within the scope of his authority, whether his knowledge was acquired in the course of the particular dealing or on some prior occasion, provided the knowledge is so recent and so circumstanced in other respects as to render it reasonably probable that it was still present in the mind of the cashier when acting for

the bank in the matter to which it relates." This instruction was given at the request of the defendant, except the words "in good faith," which were added by the court, and these words constitute the sole ground of objection. Plaintiff's counsel contends that the interpolation is meaningless, and therefore harmless; but we think it means much, and in all probability had some weight with the jury, as the learned trial judge evidently intended it should have,— else why should the instruction as requested have been so modified?

It is admitted on all sides that the instruction as requested is sound in principle, and the dispute concerns the interpolation only, and we are convinced that it was error. As a feature of the case, it was submitted to the jury whether the defendant I. E. Saling had so conducted and held himself out as to superinduce the belief that he was a member; and, if so, they were instructed that Saling would be bound, whether he was in reality a member or not. And it was suggested at the trial that there was some collusion between Worthington, an admitted member of the firm of Saling & Co. and Davis, who had formerly been in the employ of Saling & Co. as clerk, and was the cashier of the plaintiff bank at the time the loans were made, to defraud the bank; and this led to the request for the instruction, in order to convey to the jury the idea that, if the bank had actual knowledge that I. E. Saling was not in reality a member of the concern, it could not be excused for acting upon appearances, or could not found a case upon estoppel, and that knowledge of its cashier in that regard was knowledge of the bank itself. Whether there was collusion or not, the plaintiff has adopted the acts of its officer and agent by seeking to enforce the obligations growing out of the transactions, and must be held to the results which would ensue upon the consummation of a good-faith

transaction of the same nature. Knowledge of the real membership was a material circumstance attending the transactions, and it cannot be permitted to ratify in part, and reject that which may operate to its disadvantage. So that the plaintiff cannot now ignore knowledge acquired through its agent upon the ground that he did not act in good faith in loaning its funds, and thereby escape the effect of such knowledge. For this and the other errors noted, the judgment of the court below must be reversed.

Many assignments have not been considered. A large proportion of them, however, are covered by those that have been, and those remaining of lesser importance may not arise again upon a retrial. Reversed and remanded.

REVERSED.

Decided at PENDLETON, 13 August, 1898.