Argued January 25, decided January 30, 1912.

## GETTINS *v.* HENNESSEY.

[120 Pac. 369.]

EVIDENCE—HEARSAY—EXISTENCE OF PARTNERSHIP.

1. Testimony based on newspaper items, business cards, and common rumor is incompetent to prove a partnership, being hearsay.

EVIDENCE—OPINION EVIDENCE—CONCLUSIONS OF WITNESS.

2. A statement by a witness that from a business card exhibited to him he understood defendant to be a partner was a mere conclusion.

EVIDENCE—HEARSAY—EXISTENCE OF PARTNERSHIP.

3. Where it was sought to charge defendant as a member of a firm, a newspaper item, stating that the firm was about to make extensive

improvements, and that defendant was treasurer, was inadmissible, where it was not shown to have been authorized by defendant, or brought to his notice.

PARTNERSHIP—MEMBERSHIP—EVIDENCE.

4. Newspaper items, written some time after plaintiff began to work for an alleged partnership, stating that defendant was the treasurer of the firm, are inadmissible, since plaintiff could not have relied upon them in accepting the employment.

EVIDENCE—ADMISSIONS—PARTNERSHIP.

5. Where it was sought to charge defendant as a partner, defendant's statement that he and the other alleged members of the firm had formed a corporation, of which he was treasurer, is not an admission of a partnership.

PARTNERSHIP —FALSE REPRESENTATION AS TO CORPORATE EXISTENCE—
    PERSONAL LIABILITY.

6. Where plaintiff rendered services to a company, which defendant knowingly misrepresented to be a corporation, of which he was treasurer, plaintiff could recover against defendant personally only by showing that he entered the service of the company, relying upon defendant's representations.

From Coos: JOHN S. COKE, Judge.

Statetment by MR. JUSTICE MCBRIDE.

This is an action brought by F. K. Gettins against P. Hennessey, M. N. Knuppenburg, F. M. Wilson and D. H. Butts as partners under the style and firm name of S. Y. W. C. R. R. Co., to recover payment for services rendered to an alleged partnership between Hennessey and the other defendants named herein.

The complaint is for work and labor performed as a surveyor, and for materials furnished, and also upon an assigned account of the same character for work and labor performed by D. L. Buckingham. Hennessey was the only defendant served, and he answered by a general denial.

Upon the trial, plaintiff was asked the following questions, each of which was answered, over objection, as follows:

Q. "You may state, if you know, whether or not there was a firm operating at the city of Marshfield, Coos

County, Oregon, known as the S. Y. W. C. R. R. Co. at that time."

A. "Yes, sir."

Q. "Mr. Witness, you may state, if you know, whether that firm, known as the S. Y. W. C. R. R. Co., was a partnership?"

A. "I understood it so."

Q. "Now, Mr. Witness, you may state, if you know, who composed that partnership?" (To which question the defendant made the same objection as to the former question, which objection the court overruled, to which ruling defendant excepted, and which exception was allowed.) "A. D. H. Butts, F. M. Wilson, M. N. Knuppenburg, and Patrick Hennessey."

Q. "Whom did you understand you were working for when you took that employment?"

A. "This so-called company; D. H. Butts, F. M. Wilson, M. N. Knuppenburg, and Patrick Hennessey."

Q. "Mr. Witness, did you ever, during the time that you were employed by this partnership or firm, see any newspaper articles, cards, or advertising matter that indicated who the persons were in the firm, known as the S. Y. W. C. R. R. Co. ?"

A. Yes, sir; I did."

The witness was then handed a card, which he testified had been given him by A. H. Stutsman, at the latter's office, and the witness was then asked the following question:

Q. "Mr. Witness, you may state what was the occasion of his giving you that card."

A. "Merely to show me of the organization of this company."

Plaintiff's counsel then offered the business card in evidence. Defendant's counsel objected to its admission, on the ground that it was irrelevant, incompetent, and immaterial; no proper foundation having been laid, and it not having been properly identified, nor shown to be connected with this defendant in any way. The court overruled the objection, and defendant excepted thereto.

The exception was allowed and the card was then received in evidence. Counsel for plaintiff then offered in evidence a portion of a newspaper theretofore identified by plaintiff, and defendant's counsel objected to its admission on the same grounds above stated. The objection was overruled, defendant excepted to the ruling, and the exception was allowed. The portion of the newspaper was then received in evidence. The following questions were asked:

Q. "Mr. Witness, from your transactions with those named by you heretofore in your testimony, and from what you have seen in the newspaper articles, cards, or advertising matter, and from the defendant's conduct in and about your employment, have you any knowledge as to who the members were of the S. Y. W. C. R. R. Co.?"

A. "I have."

Q. "Mr. Witness, from the manner of their dealings with you prior to your employment, will you state whom you understood the parties in the firm of the S. Y. W. C. R. R. Co. to be?"

A. "D. H. Butts, F. M. Wilson, P. Hennessy, and M. N. Knuppenburg."

The card referred to is as follows:

COL. D. H. BUTTS, *President*
COL. F. M. WILSON, *Vice-President*
P. HENNESSEY, *Treasurer*

## S. Y. W. C. R. R. CO.

MARSHFIELD

OREGON

M. N. KNUPPENBURG
*Secretary and Manager*

The newspaper extract referred to was a local item from the Coos Bay Daily Times, published at Marshfield, Oregon, stating that the "S. Y. W. C. R. R. Co., the successor to the O. C. & N. Co.," was about to make extensive improvements on the water front in that city, and setting forth the character and need thereof, and that "M. N. Knuppenburg, the secretary and manager of the company," had advertised for bids for the work, etc., and closing with the statement that "P. Hennessey, who has been manager of the Libby mine for a number of years, is treasurer of the new company." There was no evidence that either the card or the item in the paper came to the notice of defendant Hennessey until long after the plaintiff's work was completed, and when on the witness stand he denied any knowledge of evidence of them until after the commencement of this action.

Counsel for plaintiff, over defendant's objection, also asked the witness F. W. Stevens the following questions:

Q. "Do you know who composed that company." ·

A. "Only as represented by advertisements and cards and general information."

Q. "At the time you were employed by them, or before the time you were employed by them, did you see any newspaper articles, cards or advertising matter that indicated who comprised that company?"

A. "I did."

Q. "At the time of your employment, and in November, 1908, state whether or not you saw any newspaper articles concerning the formation of this company?"

A. "I did."

Q. "From the cards or card which was handed you, from your dealings with this man Stutsman, and from the newspaper articles which you saw at the time of your employment, concerning the purposes of formation of the S. Y. W. C. R. R. Co. whom did you understand the members of that company to be?"

A. "I understand them to be Col. Butts, Col. Wilson, P. Hennessey, and M. N. Knuppenburg."

Several other witnesses were called, and were asked substantially the same questioins, and like answers were made. Plaintiff testified on cross-examination that he knew the defendants to be partners by information received from their agent, Mr. Stutsman, and from Mr. Bruschke, and from general talk.

Mr. Bruschke testified as a witness for plaintiff substantially as follows:

Q. "State what Mr. Hennessey and you said to each other, relative to that company."

A. "I asked Mr. Hennessey whether it would be all right if I would sell any of the property for the company, and Mr. Hennessey said that it would be all right."

Q. "Was that all that he said at that time?"

A. "I further asked him to whom I should pay the money, if I received any money from any of the parties that buy any of the land, and Mr. Hennessey said I could pay it over to him or to Mr. Knuppenburg."

Q. "If he stated at that time that he held an office in that company, you may so state." * *

Q. "Was that all that Mr. Hennessey said to you at that time about his relations with this Company."

A. "I believe that it was all, about."

Q. "Did he, or did he not, at that time, suggest that he was an officer of the company."

A. "Yes."

Q. "What office?"

A. "Treasurer.

Q. "Mr. Bruschke, did you at any time during the course of your conversation with Mr. Hennessey have any conversation regarding the interest or amount of interest that Mr. Hennessey had in the company?"

A. "Well, we had some talk; yes."

Q. "What was that?

A. It was regarding the corporation; whether the deal was going through as planned originally.

Q. "Did he say anything at that time about how much of that he owned?"

A. "Mr. Hennessey said that he put in his property with the Goodall and Perkins holdings, and that they had formed a corporation and that he had taken an interest with the corporation, and that everything was all right."

Q. "Do I understand you to say that he had put his land in for an interest in this concern; is that what he said?"

A. "Yes, sir."

Q. "Hennessey told you that it was all right to sell property?"

A. "Yes, sir."

Q. "That is all that you were talking about, wasn't it?"
A. "Yes, sir."

Stutsman, a witness for plaintiff, testified, among other things, that he was employed by Knuppenburg to sell land upon which he (Knuppenburg) had a contract. He was instructed to "get busy," and sell to whoever would buy under the conditions, and to have the necessary surveying done, to get the land ready to sell; that he employed plaintiff and directed his work; that Knuppenburg told him to consult Hennessey, who was acquainted with the situation out there (probably meaning the location of the land) ; that Hennessey went out with him in an auto once or twice, but took no part in directing the work; that he heard Knuppenburg tell Hennessey that the company had elected him treasurer, and that Hennessey replied that he did not want the job; that the cards referred to and offered in evidence were not printed until late in December or the 1st of January. Other facts appear in the opinion. Plaintiff had verdict and judgment. Defendant Hennessey appeals.    REVERSED

For appellant there was a brief with an oral argument by *Mr. John D. Goss.*

For respondent there was a brief over the names of *Mr. R. O. Graves* and *Mr. Charles A. Sehlbrede* with an oral argument by *Mr. Sehlbrede.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

Counsel for plaintiff state concisely in their brief the questions involved in this appeal, and we will now consider them in the order therein enumerated: (1) Was there prejudicial error committed by the lower court at the trial, either in the introduction of evidence or in his instruction to the jury? (2) Was there a copartnership, under which the debt sued upon in this action was contracted? (3) If so, was the appellant herein a member of such partnership? (4) Was there any legal .evidence before the jury upon which it could base the verdict upon which the judgment herein is based? (5) Is the judgment, in this action appealed from, void?

1, 2. We are of the opinion that the court erred in admitting the testimony of plaintiff and other witnesses as to whom they understood composed the S. Y. W. C. R. R. Co. The answers elicted show clearly that they had no knowledge upon the subject, except from hearsay—common rumor, cards, and newspaper items, not shown to have been authorized by or brought to the knowledge of defendant Hennessey. Still worse is the admission in the answer of witness Stevens to this question:

"From the card which was handed you, from your dealings with this man Stutsman, and from the newspaper articles which you saw at the time of your employment, concerning the purposes or formation of the S. Y. W. C. R. R. Co., whom did you understand the members of that company to be?"

Here certain data was first introduced, much of it wholly inadmissible and the witness was asked, in substance, to state what conclusion he arrived at from the data so adduced. The facts were for the jury, which could draw its own conclusion. The conclusion of the witness from these facts was entirely immaterial.

3. The item in the Coos Bay News was improperly admitted. It was not shown to have been authorized by defendant, or to have been brought to his notice, and if

it had been, there is respectable authority for holding that he was not bound to contradict it. *Fearn* v. *Tiernan,* 4 Rob. (La.) 367; *Munton* v. *Rutherford,* 121 Mich. 418 (80 N. W. 112).

Both on authority, and reason, it would seem that where one is advertised in a paper, or by the circulation of a business card, as being a member of a firm, he owes a duty to the public, as an honest man, to contradict such advertisement; and that his failure to do so may be considered by the jury as evidence of his acquiescence in the advertisement. *Fletcher* v. *Pullen,* 70 Md. 205 (16 Atl. 887: 14 Am. St. Rep. 355). But in this case there is not the slightest evidence indicating that defendant ever saw the printed card issued by the S. Y. W. C. R. R. Co., and the newspaper item was in no sense an advertisement.

4. The testimony for plaintiff indicates that he entered into the contract and had performed a great part of the work before either the cards or the newspaper item were printed, and he is not therefore in a position to claim that he entered into the contract or performed the work by reason of any representation therein contained.

5, 6. The only testimony, which we now recall, tending to show a liability of any kind on the part of defendant is that of Bruschke, who states that he asked defendant whom he should pay money to in case he sold any property for the company, and defendant said to pay it either to himself or to Knuppenburg. He also testifies that defendant told him that they had formed a corporation, and that he had put in his own holdings, along with those of Goodall, Perkins, and the company, for whom he was agent, and that everything was all right. The same witness says that defendant told him that he was treasurer of the company. This testimony tends to prove, if anything, that defendant was assuming to act as an officer for a *de jure* or a *de facto* corporation. It is certainly not an admission of a partnership, and it does not

appear that it misled plaintiff into the belief that defendant was a partner. Conceding this scrap of evidence to have been admissible, on the theory that defendant thereby held out that he was a member of the S. Y. W. C. R. R. Co., and falsely represented that it was a corporation, when, in fact, he knew, or ought to have known, that it was not, it was insufficient to establish the plaintiff's case, unless followed up by evidence that such representation was the efficient cause, or at least one of the reasons, why he rendered the services. In *Morback* v. *Young*, 51 Or. 128 (94 Pac. 35), this court laid down the rule to be applied in such cases as follows:

"But as there was no partnership, and plaintiff had no contract with Young, it was necessary for her, in order to charge him with liability for the contract of Morback, to show, not only that Young was, by his consent, held out as a partner, but that she knew of such holding out at the time she rendered the services, and that she performed such work on the faith thereof."

Counsel for plaintiff very properly disclaim that there can be a recovery in this case on the theory that defendant allowed himself to be held out as a partner, and in the whole record we fail to discover any testimony indicating that he was, in fact, a partner.

We think that the learned judge who tried this case was, in the haste incident to the trial, misled by some expressions used in the opinion of this court in the case of *Farmers' Bank* v. *Saling*, 33 Or. 396 (54 Pac. 190). But an examination of that case indicates that such expressions are not applicable to the present case. In that case there were two firms in the same town with names nearly identical, one carrying on a merchandising business under the name of Frank Saling & Co., consisting of Frank Saling and P. A. Worthington, and the other conducting a milling business; the corporation consisting of I. H. Saling, Frank Saling, and P. A. Worth-

ington. Owing to a similarity of names, and the fact that two of the persons were members of both firms, the court, to identify which firm was the real debtor, admitted testimony very similar to that admitted in the case at bar. It was not admitted to show the existence of a partnership, but to identify which of two firms the plaintiff was doing business with; the court saying that the answers of the witnesses showed that their alleged expressions of opinion were really statements of facts within their own knowledge, and not mere hearsay. The case stretched the rules of evidence to the very verge, and as to the admission of part of the testimony the court remarked that it was a procedure not to be commended.

Here the full examination develops the fact that the whole of the testimony as to plaintiff's conclusions that Hennessey was a partner is founded upon incompetent data and hearsay. He was not hired by defendant, received no directions from him, nor had any dealings with him. Neither did he see the newspaper items nor the printed card until his work had progressed fairly toward completion. Although he saw Hennessey frequently, he made no inquiries of him as to his connection with the company, but seems blindly to have assumed that Knuppenburg and the alleged "Colonels" Butts, Wilson, and their agent, Stutsman, were responsible. When the crash came, the "Colonels" and their high private, Knuppenburg, seem to have beaten a hasty retreat, and, unless defendant can be held as a partner, plaintiff seems to be in a fair way to lose the value of his services. We do not think that plaintiff has introduced any testimony tending to show that defendant was a partner.

The cause will be reversed and remanded to the court below for such further proceedings as may be necessary, not inconsistent with this opinion.          REVERSED.