Argued 1 July, decided 20 July, 1903.

## CLINE *v.* SHELL.

[73 Pac. 12.]

#### Implied Modification of Building Contract.

1. A provision in a contract for the construction of a building, requiring the contractor to furnish the hardware, is impliedly modified where the owner of the building, in the presence and with the consent of the contractor, purchased the hardware on his own account, and requested plaintiff, the seller, to charge the goods to him,

Evidence of Bias of Witnesses.

2. The evidence satisfies the court that the leading witnesses on each side in this case are interested in the result, and no one of them has an advantage over any other one in that respect.

Evidence as to Purchase of Lienable Items.

3. In this suit to foreclose a mechanics' lien for hardware furnished by plaintiff for use in the erection of defendant's building, the evidence fairly shows that defendant purchased from plaintiff the entire bill of goods charged to him.

Evidence of Value of Lienable Items.

4. The evidence sustains the finding by the trial court as to the reasonable value of the hardware for which the lien is claimed.

Notice of Lien—Agency of Contractor.

5. Where the owner of a building, according to the contractor's testimony, asked the contractor whether, if he bought some sheathing paper, he (the contractor) would put it down so as to prevent the floors being injured, and the contractor replied "Yes," and the owner thereupon said, "Well, get it here, and I will pay for it," whereupon the contractor ordered it for plaintiff, and the contractor's statement was corroborated by the owner himself, it sufficiently appeared that the contractor was the owner's agent in ordering the paper, and plaintiff's notice of lien properly included that item.

From Multnomah: Melvin C. George, Judge.

Suit by C. C. Cline against L. J. Shell to foreclose a lien for materials, resulting in a decree for plaintiff; hence this appeal. .                                Affirmed.

For appellant there was a brief over the name of *Gammans & Malarkey,* with an oral argument by *Mr. Daniel J. Malarkey.*

For respondent there was a brief and an oral argument by *Mr. Andrew T. Lewis.*

Mr. Chief Justice Moore delivered the opinion.

This is a suit to foreclose a mechanics' lien. It is alleged in the complaint that between March 30 and November 1, 1901, the plaintiff, at the special instance and request of the defendant, furnished and delivered certain hardware, of the reasonable value of $574.02, to be used in the erection of his building in the City of Portland, Oregon, no part of which sum has been paid except $300. It is further stated that, within the time prescribed by law, plaintiff filed in the proper office a notice of lien to secure the unpaid balance of $274.02; that he paid one dollar for recording

said lien, and that $50 is a reasonable sum as attorney's fees in this suit. The answer having denied the material allegations of the complaint, a trial was had, and, from the testimony taken, the court found that the reasonable value of the hardware furnished was only $520, and that there remained due on account thereof $220, with interest thereon from November 9, 1901, at 6 per cent per annum ; that one dollar had been paid for recording said lien notice; that $50 was a reasonable sum as attorney's fees ; and, a decree having been rendered in accordance therewith, the defendant appeals.

It is admitted that the hardware was used in the defendant's building, and that the lien notice was filed within the time limited therefor, and the only questions to be considered are whether the material was furnished to the defendant, and, if so, is the sum demanded the reasonable value thereof ? It is contended by defendant's counsel that the hardware was furnished to one G. L. Vanderhoof, who, as contractor, erected the said building for defendant, and that, the relation of creditor and debtor never having existed between the plaintiff and their client, the court erred in rendering the decree complained of. The transcript shows that on March 30, 1901, the defendant, being the owner of certain real property in Couch's Addition to said city, entered into a contract with Vanderhoof, by the terms of which the latter agreed, in consideration of the payment of $10,350.40, to furnish the necessary material and labor and to erect a building on said premises, and to surrender the same, free from liens, on or before August 1, 1901. The specifications contain the following clause : "Allow $300 for furnishing hardware. The contractor is to furnish and fix the hardware in place."

1. The testimony shows that, though the plaintiff deals in ordinary builders' hardware, he did not keep in stock the styles desired by the defendant, who, in pursuance of

an invitation, visited plaintiff's store about May 25, 1901, where he examined samples of hardware displayed by an agent of an Eastern manufacturing company, and made selections therefrom, duplicates of which the plaintiff ordered, and upon their arrival sent them to the building under construction, where they were used. The plaintiff testifies that he sold the hardware to the defendant, who told him to charge him therewith. Vanderhoof was present when the hardware was selected, and, as plaintiff's witness, testifies that Shell bought it. He also says that he told Shell at the time that the bill for the goods chosen would exceed $300, the price stipulated therefor in the specifications, and the latter replied that he was buying the hardware and would pay the excess, whatever it was. J. B. Finnegan, plaintiff's bookkeeper, who was present when the samples of hardware were exhibited, testifies that Vanderhoof then said : " 'Well, Mr. Shell, you understand that I am to allow $300 for the hardware, and if what you buy exceeds that you will have to pay for it,' and he said, 'Yes, I understand.' " This witness also says that Shell purchased the hardware. H. C. Ross, the agent who displayed the samples, testifies that through the plaintiff he sold the hardware to Shell, and on cross-examination, in answer to the question, "Then you were really making the sale for Mr. Cline ?" replied, "That is the idea." The defendant, as a witness in his own behalf, testifies that he did not buy any hardware for his building, or agree to pay plaintiff for any such material used therein. Richard Martin, Jr., an architect, who prepared the specifications for the defendant's building, referring to the clause thereof hereinbefore quoted, testifies that it meant that Vanderhoof was to furnish the necessary hardware, the right to select the styles desired having been reserved by the defendant, who was required to pay the excess if the value of the material chosen exceeded $300, but if it did not equal

that sum he was to be credited on the contract price of the building with the difference. The contract entered into between the defendant and Vanderhoof for the construction of the building provides that, if any dispute should arise respecting the true meaning of the specifications, the same was to be referred to Martin, whose decision was to be final and conclusive. It is argued by defendant's counsel that this provision of the contract cannot be construed to mean that the defendant was required to buy the hardware. The plaintiff was not a party to the contract referred to, and therefore is not bound by any of its provisions. Vanderhoof may have been required to furnish the hardware, but even if the stipulation were so construed it is not immutable, and if the defendant, in his presence and with his consent, purchased the hardware on his own account, and requested the plaintiff to charge the goods to him, the clause in the specifications would be modified in that particular.

2. It is also argued by defendant's counsel that the business relations existing between Vanderhoof and the plaintiff were such as to show conclusively that they were mutually interested in maintaining the latter's theory of the case, thereby discrediting their testimony. The transcript shows that, Vanderhoof having been required to give a bond for the faithful performance of his part of the contract, a guaranty company became his surety, but, as a condition precedent thereto, the plaintiff executed an undertaking in which he stipulated to indemnify said company against any loss that it might sustain in consequence of the liability incurred. The plaintiff, however, as a means of protection against the possibility of loss that might result from the obligation assumed, received all payments made by the defendant upon the contract, credited Vanderhoof the amount thereof, and applied it in discharging claims for material and labor. The plaintiff and

Vanderhoof were undoubtedly interested in the completion of the building, and are probably concerned in the maintenance of this suit, but as the defendant does not claim to have paid more than $300 for the hardware used in his building, and as he evidently desires to defeat the foreclosure of the lien, he is not a disinterested witness, and therefore possesses no advantage superior to the plaintiff in this regard.

3. It is also insisted that an inspection of the entries made in plaintiff's books, copies of which are included in the transcript so far as they relate to said hardware, conclusively show that when ordered it was treated by plaintiff as having been sold to Vanderhoof, but after the time limited for the completion of the building the account was changed so as to charge it to the defendant, and that such change is a circumstance contradictory of plaintiff's testimony that the hardware was sold to the defendant, and conclusively shows that an error was committed in decreeing a foreclosure of the lien. The first entry concerning the hardware was made May 25, 1901, at page 437 of plaintiff's daybook, and is as follows: "G. L. Vanderhoof's List for Schell, 16th and Couch;" then follows a list of articles, but no prices appear opposite thereto, except "8 Set Front Door Lock from H. DeH. and C. @ $6.95." Under date of July 6th of that year, an entry is made in another daybook, at page 109, as follows: "Geo. L. Vanderhoof, 4 pr. 3x3 Jap Steel Butts; 4 Set Rim Lox, chgd on Schell's bill." Five days thereafter the following entry appears at page 129, to wit: "Geo. L. Vanderhoof, 16 and Couch. 8 Rolls Grey Economy, 75, 6.00. The above is an error chgd to L. J. Shell." On August 21, 1901, at pages 287 to 290, inclusive, of the daybook, under the caption, "Geo. L. Vanderhoof, 16 — Couch St. Job," many entries appear, and among them the following: "Sash weights; sash cord; * * Trim Hdw. to am't. of $300." The total charge is

$4,704.44, below which is written: "It is agreed that we furnish bill for above price. Anything added thereto to be charged at same rate and anything deducted at the same rate." The plaintiff's ledger account with "Geo. L. Vanderhoof — Schell Flats," at pages 90, 118, and 137 shows that the entries in the daybook hereinbefore mentioned are copied therein, one of which will illustrate the method pursued: "May 25, 1901, Mdse. Folio 437. Dr. 00. Cr. ——." Notwithstanding the entry in the daybook in respect to the charge of six dollars is stated to be erroneous, it is carried into the ledger as a charge against Vanderhoof. Entries of charges against the defendant appear in plaintiff's daybook, at page 202, on July 30, 1901, of four items, but no values are set down. Similar entries appear at pages 243, no date being given; 343, September 5, 1901; 375, September 14, 1901; 422, no date stated; 437, September 30, 1901; and 485, 486, October 10, 1901, when the articles charged in the preceding entries are recharged and the prices carried out, the total value being $573.72, and a credit of $300 allowed, leaving $273.72 due, which was thereafter increased by a charge of eighty cents entered on October 15, 1901, at page 5, evidently another daybook. The summary of these entries is copied in plaintiff's ledger under the title "L. J. Schell, 16 and Couch," the first six containing no charges, but those of October 10 and 15, 1901, being $273.72 and eighty cents respectively, A credit of fifty cents appears in the ledger under date of December 31, 1901, thus showing $274.02 due.

The plaintiff, illustrating his method of preserving a record of his business, testifies that he keeps an estimate book in which is noted articles desired by his customers, from which orders therefor are filled or given, and that, Vanderhoof having made out and delivered to him a list of the hardware selected by the defendant, it was not en-

tered in the estimate book, but in the daybook. He further says that, having agreed with the defendant that when all the hardware had been furnished the entire sum demanded therefor should be charged, he directed his bookkeeper not to mark the price of the articles sent to defendant's building, but to keep a memorandum thereof and to put all the items into one bill, making the prices thereof reasonable. His testimony is corroborated by that of his bookkeeper, Finnegan, who, in explaining why no prices were set opposite the items constituting the first six entries of the defendant's account as it appears in the ledger, testifies that, all the hardware not having been delivered at one time, the plaintiff told him that when it was all sent to the defendant's building to charge him therewith, and that he adopted this method of keeping the books so that he might refer to what had been delivered. This witness, on cross-examination, was asked the following question: "Is it not a fact that you never charged Mr. Shell more than $273 worth of hardware?" to which he replied: "That is all that is carried out in the ledger; yes. Q. And the balance was charged to Mr. Vanderhoof? A. It might be so interpreted. We charged Vanderhoof $300 for the credit allowed Mr. Shell. We could not give Mr. Shell credit for it without receiving it from some source." Though Finnegan's testimony is true that the entry of $273 is the only charge against the defendant as disclosed by the ledger, the daybook, however, from which the entry was transcribed, shows that he was charged with hardware in the sum of $573.72, and credited with $300 paid on account thereof by Vanderhoof, but by no reasonable interpretation can it be said that any part of the hardware was charged to Vanderhoof. It is true that the schedule prepared by him was entered in the daybook under the caption, "G. L. Vanderhoof's List for Shell, 16th and Couch," but no value is set opposite any article specified therein, except the front

door locks. The entry in this manner is compatible with, and seems to support, plaintiff's testimony that the schedule of articles selected was noted in the day, instead of the estimate, book. We think the testimony of the plaintiff, corroborated as it is by that of his bookkeeper, overcomes any inference that might be drawn from the appearance of the books, and that the preponderance of the whole testimony shows that the defendant purchased from the plaintiff the entire bill of hardware charged to him.

It will be remembered that the specifications provided that $300 was to be allowed for hardware, and the testimony shows that this sum was included in the contract price for the construction of the building. The defendant having purchased the hardware, as we have found, Vanderhoof must have received this money to his use. The plaintiff testifies that, when the hardware was selected, Vanderhoof said in the defendant's presence that he would pay $300 on account thereof. He further says : "Vanderhoof was to allow $300, and I knew the money was being paid to the store, and naturally all I had to do was to charge it up to him, as I did in the original bill." Vanderhoof, in speaking of this matter, testifies as follows : "My understanding was that when the hardware was bought I was to put it in place, and I was to pay $300 on it; that is the way I figured on the contract, that I was to pay $300 on furnishing the hardware. Q. Did you pay $300? A. I paid $300. At least, I told Mr. Finnegan to charge me that on my account." We think Vanderhoof's declaration made in the defendant's presence, without objection, that he would pay $300 on account of the hardware, warrants us in concluding that the defendant authorized an application of the money in the manner pursued, though the credit therefor was not entered upon the books until August 21, 1901.

4. This brings us to a consideration of the value of the material furnished. The plaintiff testifies that the prices

charged for the articles furnished by him to the defendant were reasonable, and his testimony in this particular is corroborated by that of Ross, the agent through whom the hardware was secured, and also by that of Vanderhoof. B. O. Wood, a clerk for a hardware company, as defendant's witness, testifies that he has had thirteen years' experience in the general hardware business, and, having examined the specifications of hardware used in the building constructed by Vanderhoof, he estimated the reasonable value thereof to be $462.20, and on cross-examination gives a detailed statement of what he considers to be the value of the several items. Walter B. Honeyman, of the Honeyman Hardware Company, of Portland, who is experienced in the business, having visited the building constructed by Vanderhoof and carefully examined the hardware used therein, appearing as defendant's witness, and his attention being called to the charge of $574.02, was asked on direct examination: "Are you able now to state what in your opinion is the reasonable value of that hardware as a whole?" and replied: " I think that is reasonable enough, considering we are in the wholesale business. We buy goods a great deal cheaper than Mr. Cline does, and he buys his goods from wholesalers and pays a profit on them. I do not see why that would not be reasonable on them. The waybills of hardware have been sold in this town for the last three years; nobody has made a profit on it, and there is not fifteen per cent made on them. Nobody can afford to sell goods at the price Mr. Woods stated." He also testifies concerning the value of many of the articles included in plaintiff's bill, showing that the prices charged therefor are reasonable, and, referring to certain butts and screws which Wood testified he could sell at ten cents each, says: " Mr. Wood cannot buy those hinges for less than thirty-two cents a pair laid down here." We are satisfied that the prices for the hardware are reasonable, but the

court having allowed therefor only $220, instead of $274.02, the sum demanded, and the plaintiff not having insisted thereon at the trial herein, the decree in this respect will not be disturbed.

5. It is contended by defendant's counsel that the lien notice does not contain a true statement of the account, because it includes an item of "8 rolls sheathing paper, $6," which it is argued the defendant did not order, nor authorize Vanderhoof to purchase for him. In speaking of this matter, Vanderhoof testifies that, to prevent the floors from being injured by the adamant plastering, with which he had nothing to do, the defendant, referring to the paper as the proper means for this purpose, inquired of him, "You will put it on if I buy it?" to which he replied, "Yes," and the defendant said, "Well, get it up here, and I will pay for it," whereupon he ordered it by telephone from the plaintiff. The defendant corroborates this statement in every particular, for he says: "During the time the plasterers were up there, the adamant man was making a terrible muss on the floors, and Mr. Martin and Mr. Vanderhoof were there, and I spoke to them and said I wished we could do something to save those floors a little, and they all agreed with me that they were making a terrible muss on the floors, and I said: 'Well, couldn't we do something? Couldn't we put down some kind of paper or something on the floor to protect it?' and Mr. Martin says, 'Yes, you can put down building paper.' 'Well,' I said, 'It won't be very expensive, will it?' and he said, 'No, it won't cost much;' and finally Mr. Vanderhoof spoke up and he says, 'If you will get the paper I will have it put down;' and he says, 'I don't know what it will cost, but it won't cost much;' and he says, 'I will go down and telephone and see what it will cost;' so he went away, and came back, and he says, 'It will cost six bits a roll.' 'Well,' I said, 'How many rolls will it take?' He says, 'I think it will take about eight.'

.

.

'Well,' I says, 'you better order it, I think.' He says, 'If there is, you can't tell exactly whether it will take eight rolls or less ; but if there is any left I will take it back, and if it requires any more we will have to order more.' 'Well,' I says, 'that is all right.' He says, 'I think eight rolls will do it;' so I says, 'You better order it.' That is about all there was of that, that I remember about." No doubt can possibly exist that Vanderhoof was thereby created defendant's agent in ordering this paper, which was sold and delivered to the latter by his express order, and the contention that the notice of lien does not contain a true statement of the account is without merit.

Having examined the testimony with great care, we conclude that the decree should be affirmed, and it is so ordered.                                AFFIRMED.

Decided 20 July, rehearing denied 15 October, 1903.