Argued December 18, 1975, affirmed January 26, reconsideration denied February 25, petition for review denied March 23, 1976

STATE ex rel STATE HIGHWAY COMMISSION,
*Respondent,*
*v.*
OREGON-WASHINGTON LUMBER COMPANY,
*Appellant.*
(No. 33-482, CA 4395)

STATE ex rel STATE HIGHWAY COMMISSION,
*Respondent,*
*v.*
OREGON-WASHINGTON LUMBER COMPANY,
*Appellant.*
(No. 33-570, CA 4395)
544 P2d 1058

*Gary M. Bullock,* Portland, argued the cause and filed the brief for appellant.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

FORT, J.

**FORT, J.**

In this condemnation action defendant appeals from a jury verdict of $340,000 awarded it, alleging errors in the receipt of certain testimony entitling it to a new trial.

■ The first assignment challenges the receipt of certain testimony relating to a survey of the properties to determine the respective square footage taken in each and the total of all, and the aerial photo upon which it was delineated. Ronald Banzer was employed by plaintiff as assistant resident engineer on the major highway project resulting in this acquisition. Mr. Banzer was the opening witness in this eight-day trial, and the matters challenged arose in the early part of his testimony. We set out the pertinent portions[1] of the testimony. The testimony was immediately prior to the witness's identification of the aerial photo, upon which had been outlined in colors the four parcels of land involved in the taking. The witness was then called upon to explain to the jury what the photograph generally depicted. Although the actual survey work leading to the outlining of the various parcels was not

---

[1] On direct examination:

"Q And after the design in 1969, would survey crews go upon the property for the purpose of locating the right-of-way and such?

"A Yes, they did.

"Q When did they first go on the property?

"A (No audible response.)

"MR. BULLOCK [defense attorney]: I have a question in aid of objection, if I may.

"THE COURT: You may.

"MR. BULLOCK: Sir, did you survey the property?

"THE WITNESS: Pardon?

"MR. BULLOCK: Did you survey the property?

"THE WITNESS: I was in charge of people that have surveyed the property, yes.

"MR. BULLOCK: Did you personally go on the property and survey the property, yes or no?

"A No.

"MR. BULLOCK: I would object to his testimony, unless somebody comes out that actually went on the property and testifies, Your Honor.

"THE COURT: Well, so far we haven't had anything that critical it seems to me. For now, I will permit the examination to continue."

done directly by the witness, it was done by surveying crews operating under his general charge. We think the exhibit, which was offered and received not as depicting a completely accurate survey of the various parcels outlined as might be a surveyor's detailed map, but simply as one which with substantial accuracy identified the areas involved in the taking both to one another, to the project and to remaining lands of the defendant, was clearly admissible. *Trook v. Sagert,* 171 Or 680, 690, 138 P2d 900 (1943).

The second part of the first assignment also relates to testimony of Mr. Banzer received shortly after the above ruling. We set out its relevant portions from the transcript.[2]

---

[2] On direct examination:

"Q Are the parcels that are to be acquired, illustrated on the exhibit?

"A Yes. Do you want them numbered?

"Q Yes, if you would please.

"A Okay. Number 1 (indicating), this is number 2 (indicating), 3 is a little triangle right up—it looks like just all green, but that's number 3 (indicating), and this is number 4 (indicating).

"Q And when you're referring to those parcels, are they outlined with tape of a certain color?

"A They are outlined in green, the extremes of them.

"Q Are you familiar with the acreage and/or the square footage in the entire parcel?

"A Yes, I am.

"Q And what is that?

"MR. BULLOCK [defense attorney]: Your Honor, I'm going to have to object to this, there's no foundation laid as to how this was computed, the legal description, anything.

"THE COURT: I think that we should have a little more qualification as to precisely what Mr. Banzer did in determining the acreage, yes.

"* * * * *

"A There were points available, and still in existence, that were on the original deed. The distances were measured physically with a steel tape, plumb bobs and a transit. Angles were turned, measurements were taken. The angles were turned to 6 times up, which is the prescribed manner of doing a precision work. It has to be.

"MR. HOLLAND [plaintiff's attorney]: Now, Your Honor, I'd like to ask him how many acres or square foot he found in that property.

■ Whether a lay or expert witness has the requisite knowledge, training and experience to testify concerning factual observations made by himself and those working under his supervision and control is a matter in the individual case which is largely within the discretion of the trial judge. *State v. Golub,* 24 Or App 19, 544 P2d 609 (1976), and cases cited therein. That has long been the rule in Oregon. *Fidelity Sec. Corp. v. Brugman,* 137 Or 38, 46, 1 P2d 131, 75 ALR 1333 (1931).

■ Defendant contends that since Mr. Banzer was neither a registered land surveyor nor a licensed regis-

---

"MR. BULLOCK: I would again—they set it out per parcel. And I would ask the Court that he explain it per parcel, how many square feet are in each parcel.

"THE COURT: Well, I think that's a fair request. I'm a little troubled, still, do not know precisely. When you say it was measured with tapes, plumb bobs and transit. This is—this was done by other men, not yourself?

"THE WITNESS: Yes.

"THE COURT: Did you watch them in any of these operations?

"THE WITNESS: At times. It took a total length of time of 3 weeks to do this with various other duties that the crew had to do.

"THE COURT: Right. How much time were you personally there, Mr. Banzer?

"THE WITNESS: I would say 20 hours.

"THE COURT: Over the 3 week period?

"THE WITNESS: Yes.

"THE COURT: And are these men experienced, and had they worked under you in the past?

"THE WITNESS: Yes.

"THE COURT: You can vouch for their accuracy?

"THE WITNESS: Yes.

"THE COURT: And were you there when they were doing some of the work with the transit and the plumb bob and the other equipment?

"THE WITNESS: Yes, I was.

"THE COURT: And as far as you could tell, they were proceeding in the way that you had taught them, and asked them to proceed?

"THE WITNESS: That's right.

"THE COURT: All right. I will permit the interrogation to continue, but I think you should give us the amount in each parcel as has been requested."

The witness then gave the square footage of each parcel and continued forward with his testimony without further objection relative to the matters challenged here.

tered civil engineer in Oregon, he was not qualified to testify concerning the survey and the amount of land taken. The trial court, as well as both counsel, carefully examined Mr. Banzer at length concerning his training and experience. The court concluded that he was qualified. The weight to be attached to his testimony was for the jury. There was no abuse of discretion.

In its brief defendant discusses at length confusion which arose early in the trial from an admitted error in the legal description in the complaint. Since, however, this was amended without objection at the end of the first day of trial and since defendant did not seek but in effect refused at that time to ask for a mistrial, we decline to consider the matter.

The second assignment relates to certain testimony adduced from Mr. Kolberg, a qualified real estate appraiser, and relates to evidence concerning the acquisition price paid by defendant for three parcels of property which together included the areas taken. The objection specifically is as to two of the parcels and is based on remoteness of the acquisition dates in relation to the time of taking. Defendant agrees that this is normally a question within the discretion of the trial court, *Douglas County v. Meyers,* 201 Or 59, 268 P2d 625 (1954), where five years was upheld; *Highway Comm. v. Jones,* 237 Or 372, 374, 391 P2d 625 (1964); *Highway Comm. v. Empire Building,* 17 Or App 616, 523 P2d 584, Sup Ct *review denied* (1974); but here contends that the trial court abused that discretion. The two pieces were acquired by defendant in August and November 1967. The actual filing of the complaints, here consolidated for trial, was in March and April 1973. The time of the first public hearing on the proposed I-5 highway widening and interchange improvement in the affected area was in April 1971 and was based upon a design change proposed in July 1969. Mr. Kolberg in his testimony allowed for and considered upward changes in land values since the

1967 acquisition. We think the court did not abuse its discretion in allowing the testimony.

Affirmed.