253 P.2d 233

**NAGELE et al. v. MILLER et al.**

No. 7892.

Supreme Court of Idaho.

Jan. 28, 1953.

Rehearing Denied Feb. 23, 1953.

---

Smith & Ewing, Caldwell, for appellant.

Thos. Y. Gwilliam, Nampa, for respondent.

PORTER, Chief Justice.

The respondents filed a creditor's claim against the estate of John W. Smeed, deceased. The claim was "for wages due and owing the undersigned, for the months of September, October, November, December of 1946, and for the sum of $1800.00 for the year 1947, and for the sum of $1800.00 for the year 1948, and for the sum of $1800.00 for the year 1949, which are due and un-

paid." The total amount of the claim is the sum of $5700. The creditor's claim having been rejected by the executors of the will of John W. Smeed, deceased, this action was brought thereon.

This case was before this court on a former occasion on the question of the sufficiency of the creditor's claim. Nagele v. Miller, 72 Idaho 24, 236 P.2d 722.

The cause was tried to a jury and resulted in a verdict of $2300 in favor of respondents. Judgment was entered on the verdict and appellants have appealed from such judgment to this court. The assignments of error by appellants raise only the question of the sufficiency of the evidence to sustain the verdict and judgment.

It is alleged in the amended complaint that during the times set out in the creditor's claim, the plaintiff, Maxine Nagele, with the knowledge and consent of. John W. Smeed, deceased, and for his use and benefit, performed services as a bookkeeper and other services at the special instance and request of the deceased; that the reasonable value of said services is the sum of $150 per month and that no part thereof has been paid.

The record discloses respondent, Fred Nagele, was employed by John W. Smeed beginning in the year 1946 as foreman in the stockyards of the Union Pacific Railroad Company at Nampa. The stockyards were operated by Smeed under contract with the railroad company. Among other duties, Nagele was to keep an account of the amount of cattle and other livestock checked in and out of the yards and the amount of feed used. He had to report such amounts to the railroad company and also had to report to the office of the deceased as to the operations of the stockyards.

In addition to his wages, said respondent was furnished a house in which to live located near the stockyards. He lived in such house with his wife, respondent, Maxine Nagele. His employment apparently continued until the death of John W. Smeed on September 18, 1949. The work at the stockyards was heavier during the summer months than at other times in the year. There were connected telephones in the house, in the scale house and on the docks of the stockyards.

During the months of June, July, August and September, 1946, Fred Nagele being new at his work, Maxine Nagele was employed by deceased to assist her husband in keeping his records, making out his reports and performing his other duties at the wage of $50 per month. She was paid such wages in full as is shown by the checks made to and endorsed by her in evidence as exhibits. Again in the months of July and August, 1947, said respondent was so employed by deceased and was paid wages for those two months at the rate of $50 per month. The record does not disclose any agreement by deceased to employ respondent, Maxine Nagele, from October 1, 1946, to June 30,

1947, or from October 1, 1947, to the date of his death. On the contrary, it is in evidence that the deceased told respondents when Maxine Nagele was employed for August and September, 1947, that after the two months were over she was not to do any more record keeping. The record does not contain any evidence of any claim or demand by said respondent for wages during said periods.

The record does not disclose any request on the part of the deceased for the rendition of the alleged services for which respondents claim compensation. To recover under such circumstances on the theory of an implied contract, it is ordinarily deemed essential to show that the services were rendered with the reasonable expectation that they would be paid for by the person sought to be charged, and that he knew the services were being performed with the expectation that he would pay for the same. 71 C.J., Work and Labor, Sec. 6, p. 41. However, although the services were not rendered at the request of the deceased, if they were knowingly and voluntarily accepted, a promise would arise to pay their reasonable worth. In 58 Am.Jur., Work and Labor, Sec. 6, p. 514, it is said:

"The general rule is that where services are rendered by one person for another, which are knowingly and voluntarily accepted, without more, the law presumes that such services were given and received in the expectation of being paid for, and implies a promise to pay their reasonable worth."

See also, Hartley v. Bohrer, 52 Idaho 72, 11 P.2d 616; Chapman v. Booth, 71 Idaho 359, 232 P.2d 668; Wasson v. Wasson, 73 Idaho 359, 253 P.2d 236; cf. Felton v. Finley, 69 Idaho 381, 209 P.2d 899.

There is no showing in the record that Maxine Nagele rendered the alleged services in the expectation of being paid therefor. Neither is there any showing that the deceased knew of the rendition of the alleged services and voluntarily accepted the same from which a presumption might arise that such services were rendered and received in the expectation that they would be paid for.

The burden of proving all the elements of an implied contract including the amount of the alleged services and the value thereof rested upon respondents. 71 C.J., Work and Labor, Sec. 112, p. 132; 58 Am.Jur., Work and Labor, Sec. 60, p. 559. This being an action against an estate, the so-called dead man's statute limited the testimony of claimants against the estate and made proof by claimants difficult. However, difficulty of proof does not obviate the necessity for proof.

In this case the evidence is indefinite and uncertain as to the amount of services alleged to have been rendered. It consists of a showing that Mrs. Nagele on occasion answered the telephone and was occasionally seen to be engaged in the making and filing

 

of reports. It does not show the hours per day, days per week, or weeks per month that Mrs. Nagele claims to have actually worked.

Likewise, there is no probative evidence as to the reasonable value of the services rendered. It consists merely of the testimony of an accountant that about once a month during the years 1948 and 1949 he had seen Mrs. Nagele working, and that the doing of such work on a part time basis was worth $150 per month. There is no showing as to how much part time he had in mind or had taken into consideration. On the other hand, the evidence affirmatively shows that when Mrs. Nagele was employed to do work identical with the work she now claims to have performed and for which she claims remuneration, she only received $50 per month.

There is no substantial evidence in the record to show that the alleged services were rendered at the instance and request of deceased; that the same were rendered in the expectation of being paid for; or that they were knowingly and voluntarily accepted by deceased; and the evidence is not definite and certain as to the amount of such services or as to the reasonable value thereof. The record indicates that the services for which respondents seek to collect were nothing more than assistance rendered by respondent, Maxine Nagele, to her husband in helping him to carry out the duties of his employment.

Upon the record in this case, we must hold that the verdict and judgment are not sustained by substantial evidence. The judgment is reversed and the cause remanded with direction to dismiss the action. Costs to appellants.

GIVENS, TAYLOR, THOMAS and KEETON, JJ., concur.