Argued March 5, affirmed April 30, 1969

FARRIS ET AL, *Appellants, v.* McCRACKEN ET AL,
*Respondents.*

453 P2d 932

*James H. Clarke,* Portland, argued the cause for
appellants. With him on the briefs were McColloch,
Dezendorf & Spears, Richard Haeder and Lewis K.
Scott, Portland.

*John R. Faust, Jr.,* Portland, argued the cause for
respondents McCracken. With him on the brief were
Cake, Jaureguy, Hardy, Buttler & McEwen, Portland.

No appearance for respondents National Mortgage
Co., and Acacia Mutual Life Insurance Company.

Before PERRY, Chief Justice, and SLOAN, GOODWIN,
HOLMAN and HAMMOND, Justices.

SLOAN, J.

Plaintiffs are building contractors who were engaged by defendants to do extensive remodeling work in defendants' home. Plaintiffs initially estimated that the proposed work would cost about $10,000. After partial completion and some additions to the original project that estimate was increased to $11,500. The final, and only bill, submitted to defendants was nearly double that amount. Defendants had made some payments during the progress of the project but refused to pay the total bill. Plaintiffs filed a mechanics' lien and this suit to foreclose followed. The trial court denied the lien. Plaintiffs appeal.

At the outset we should observe that the evidence is inconclusive to show whether or not plaintiffs undertook this job for the estimated cost or if it was a cost plus contract. Plaintiffs made some effort to prove the latter, but the evidence does not sustain any agreement or meeting of the minds on the subject. The case was tried and decided on the theory that plaintiffs were required to establish the reasonable value of their work, *Timber Structures v. C.W.S.G. Wks.*, 1951, 191 Or 231, 229 P2d 623, 25 ALR2d 1358, and not cost determined by contract.

We agree with the trial court that the evidence would not support a lien for a sum of money greater than that which plaintiffs have already been paid. The weakness of plaintiffs' case is that their evidence was limited, almost entirely, to the cost of the labor and materials that went into defendants' home. There was little evidence to show that the costs were reasonable and not excessive.

With slight exception the only evidence in respect to charges made by subcontractors were the bills submitted by the subcontractors. These bills were not

supported by any testimony to show the basis of the costs charged in any particular. There is no clarification of the basis for the charges made for materials and no indication that the cost of the labor was proper or that the amount of labor charged for was reasonably necessary. Another deficiency in the evidence will be mentioned later.

On appeal plaintiffs' argument can be summarized by this statement in their brief:

"Defendants' principal defense, which was accepted by the court below, is that plaintiffs' failure to offer self-serving testimony of their opinion that their charges were reasonable—one obviously expressed in the lien claim itself and the verified complaint—constituted a failure of proof, because the reasonable value of the work can only be proved in that way. The court did not find that the evidence of value was insufficient, but that there was none at all. This was patent and demonstrable error. This Court has consistently held, in accordance with the rule everywhere else, that the reasonable value of property can also be shown by evidence of its recent selling price on the open market, [citing cases]."

The assertion in plaintiffs' last statement that value can be shown by evidence of the selling price in the open market can be summarily answered. The evidence of any market price or value for the materials used was non-existent. There was some evidence relative to the charges made for some small items used in the building. These indicated a wide variation in the prices charged. Plaintiffs' claim that the prices specified in the bills presented by the subcontractor, for example, is evidence of market price. This is not so. There is nothing in the record to show how or by what process the materials were priced, whether or not any

of the subcontractors' bills may have padded their accounts. No explanation of the charges was offered. There is simply no evidence of the open market selling price other than the bills presented.

Plaintiffs' assertion that their only failure was to offer self-serving declarations as to the reasonable value of their labor and materials misses the mark. Certainly, a prime purpose of requiring testimony as to reasonable value is not merely to hear some witness say that. It is intended that such evidence will give veracity to the claims being made. A charge stated in a bill that a plumber or carpenter spent x number of hours on the job may be of some evidentiary value. But when challenged by a denial it falls short of persuasive character of evidence needed to convince a trier of the fact that the charge made is justified and accurate. To say that the contractor paid a given amount for an item of labor or material, without explanation, does not, of itself, prove that the amount paid was justified. For example, in *Cline v. Shell*, 1903, 43 Or 372 at 380, 381, 73 P 12, the issue was the value of hardware used in a building. Plaintiff Cline produced two witnesses with long experience in the hardware business. These witnesses had given detailed statements of wholesale costs, the customary amount of mark-up above wholesale costs and expressed opinions based on the facts that the costs and charges made in that case were reasonable. The evidence, as reported in the opinion, demonstrated the basis of the costs and why they were reasonable.

Professor Corbin at Volume 5, Contracts, § 1004, of his work entitled "What is Meant by Value" explains the numerous variables that apply to this illusive problem. His analysis demonstrates why cost alone in a situation like the instant case is not sufficient.

See also, *Parker v. Holmes,* 1955, 79 Ariz 83, 284 P2d 455, 51 ALR2d 1005.

In the instant case that kind of evidence to give verity to the charges made, particularly of the subcontractors, is lacking.

Plaintiffs rely on a few cases such as *Portland Pulley Co. v. Breeze et al,* 1921, 101 Or 239, at 249, 250, 199 P 957, where we said: "* * * that in the circumstances presented here the evidence as to the cost of the labor and materials was competent and furnished some evidence of reasonable value; and the precedents support this conclusion: *Chaperon v. Portland Electric Co.,* 41 Or. 39, 48 (67 Pac. 928); *Dakin v. Queen City Fire Ins. Co.,* 59 Or. 269, 273 (117 Pac. 419); 22 C. J. 184."[1]

The cases just cited lend only meager help to plaintiffs. *Portland Pulley Co. v. Breeze* was an action to recover the value of labor and materials used by plaintiff in building some experimental baskets. Defendants in that case had "embarked" upon the business of making wooden undertakers' baskets of the kind used by undertakers to carry dead bodies. It was apparently intended that the wooden baskets were to replace wicker baskets then in use. Defendants had engaged plaintiff to manufacture a trial run of the wooden baskets and *Portland Pulley Co. v. Breeze* was an ac-

[1] *Chaperon v. Portland Electric Co.,* was an action for damages to a horse and wagon. Plaintiff had testified that he paid $4 for repair of a broken shaft on the wagon and $3.35 for repair of harness. The court held that although evidence of cost should ordinarily be supplemented with competent evidence of the reasonableness thereof, the small items claimed would be well within the common experience of the jury to judge. *Dakin v. Queen City Fire Ins. Co.* was an action for fire loss. Plaintiff had been permitted over objection to state the cost to him of an iron safe he had purchased new. The court held that because there would be little or no deterioration in the use of a safe the admission of the statement of cost was not error.

tion to recover for the quantum meruit cost of the manufacture of these experimental baskets. Plaintiff's evidence, in part, was an itemized cost list of the materials and labor expended in the manufacture. In the case the court relied on the experimental nature of the work to justify the use of costs to show value. The opinion comments that a part of the experiment had been to test the accuracy of prior estimates of cost. The case is an unusual one, not because of the subject matter, but because of the nature of the work done.

In applying the *Portland Pulley Co.* case to the instant situation plaintiffs' claim that all of the work and materials expended on defendants' house were equally eccentric, sophisticated and unlike any other work usually performed in remodeling or building a house. This is partially true, but it does not excuse the failure to produce witnesses to verify the costs submitted. Granted the unique character of the work done, proof to sustain the charges made would either have been available or was non-existent.

A particular example of the weakness of plaintiffs' evidence, mentioned before, will suffice to explain their failure of proof. Plaintiffs charged defendants at the rate of $7 per hour for all carpenter labor they provided. This rate of charge was computed by taking the union scale for carpenter labor of about $4.85 per hour. To this was added plaintiff's overhead.

To arrive at the amount of this overhead, plaintiffs had taken their entire costs of operation for the previous calendar year, 1966, and divided that total cost by the total number of hours that had been listed in a time book record for the year 1966. The record does not reveal whose labor was included in the time book. Apparently it was for both plaintiffs and their employees. These costs included all travel costs, repair

and maintenance of all equipment, advertising, entertainment, taxes, license fees, the cost of replacing and keeping tools in hand and all other costs. The hourly cost of this total was computed to be $2.21 per hour for all hours on plaintiffs' time book for the year 1966. This sum, added to the carpenter union scale came to $7.06 per hour. As stated, defendants were charged $7 per hour.

There is not one word of testimony to indicate whether or not any of the charges for the year 1966 included in the computation were high, low or average in comparison to any other year. There is no breakdown of the hours shown in the time book to indicate whether or not all of it was for a skilled craftsman. For all that appears, any part of the hours listed could have been for the most menial of skills. All that is shown is a compilation of total costs divided by total hours to arrive at the overhead costs. We have no way of knowing how efficiently the work had been done in the sample year or if there had been usual or extensive repair work on trucks and other equipment, or if a usual or unusual number of tools had been purchased during that year. There is nothing to justify this formula for computing overhead costs. The evidence is simply not acceptable to establish that fact.

It is also impossible to tell from the evidence with any degree of certainty the extent to which the items included in the overhead charge may or may not have been lienable. For an exposition on this subject see *Mathis v. Thunderbird Village, Inc.*, 1963, 236 Or 425, 389 P2d 343.

As the trier of the facts in this unfortunate dispute, we, like the trial judge, are not satisfied with the evidence. For this reason the appeal must fail and the decree is affirmed.