Argued April 17, judgment vacated; case remanded
for further proceedings and entry of a judgment
consistent with this opinion, reconsideration denied
July 24, petition for review denied July 31, 1979,
287 Or 215

# MIDWEST FABRICATION, INC., *Respondent,*

*v.*

# WOODEX, INCORPORATED, *Appellant.*

## (No. 32234, CA   12307)

596 P2d 581

Harold D. Gillis, Eugene, argued the cause and filed the briefs for appellant.

J. W. Walton, Corvallis, argued the cause for respondent. With him on the brief was Ringo, Walton, Eves & Gardner, P.C., Corvallis.

Before Schwab, Chief Judge, Thornton, Buttler and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Midwest Fabrication brought this action to recover $31,627.22 as the value of labor and materials furnished to Woodex at the latter's request. Woodex denied all allegations other than the corporate status of each of the parties and, as an affirmative defense, alleged that Midwest had expressly agreed to perform the work in question for a price not to exceed $20,000. Woodex also counterclaimed for damages resulting from Midwest's failure to perform the work as agreed. The case was tried to the court, which awarded Midwest $27,161.23 as the reasonable value of labor and materials.[1] Woodex' counterclaim was denied. Woodex appeals the judgment for Midwest, but raises no issues in regard to the counterclaim.

Woodex manufactures wood pellets from waste. Its Brownsville plant was formerly a particle board facility, but was converted in 1975. In May, 1976, Midwest was hired to do general maintenance at the plant, including repair of holes in metal duct work and replacement of machinery. At that time Woodex was having difficulty controlling particulate emissions from one of several wood particle collectors (called "cyclones") in its system. After attempting unsuccessfully to correct the problem by making minor changes in that cyclone, Midwest's president (Thompson) presented Woodex' management a proposed solution in the form of a sketch depicting a substantially different type of cyclone. The sketch was prepared by a Midwest employee (Hayes). Woodex approved the plan and authorized Midwest to construct and install the new cyclone.

The cyclone was installed. When it was put into operation, it controlled the emissions at that point, but

---

[1] Midwest claimed that Woodex had agreed to pay the cost of materials plus 10 percent. The trial court specifically found there was no such agreement. The difference between Midwest's prayer and the judgment was not explainable on that basis alone. The trial court issued a letter opinion, but did not explain the basis of its award. That basis is not evident, and neither party is able to explain it.

[677]

the amount of dust emitted from another part of the system increased significantly. Woodex claimed that problem was a result of Midwest's work. Midwest claimed it was not. That issue was resolved by the court's finding on the counterclaim and is not before us.

Woodex raises two assignments of error. First, it claims the trial court erred in permitting Thompson to testify that the prices Midwest paid for the materials used in the job were reasonable. Thompson had testified that Midwest was in the business of "steel fabrication, welding, sandblasting, machining and painting" and that he personally had been in that business since 1972. He had also testified that all the materials for which Midwest was charging had actually been used in the job for Woodex. (All the claimed charges were listed in an exhibit entitled "Costs of Woodex Job," which was apparently prepared in connection with this action.)

The following exchange then occurred:
"Q  And are the prices which you paid for those materials reasonable prices?
"A  Yes, they are.
"MR. GILLIS:  I object and ask that the answer be stricken unless there is a foundation, if he knows, either has purchased this kind of material before or has knowledge of what the reasonable charge for these prices—
"Q  Fine. I will lay the foundation, Mr. Gillis. Mr. Thompson, in the ordinary course and operation of your business do you have occasion to purchase materials?
"A  Yes, I do. When I originally started the business I did all the purchasing, including all the fabricating work for work such as this.
"Q  All right. And in the process of purchasing these materials, have you become acquainted with the reasonable prices for materials?
"A  Yes, I am. I have to keep up to date on these all the time in order to establish the operating rates of our company.

[678]

"Q In your opinion were the prices which you paid for these materials reasonable according to the prevailing standard at the time?

"A Yes.

"MR. GILLIS: I will have the same objection. The witness has not identified that he's ever purchased a pneumatic system before or other materials in here other than purchasing steel materials. I think he still has not laid a foundation that he's ever done this type of purchasing before.

"A I can —

"THE COURT: Well, you'd better ask him, Mr. Walton, whether he ever bought anything like this or similar.

"Q Mr. Thompson, have you ever bought anything similar to this?

"A We worked with a company similar on the Aerovac dust collecting system which was designed by Hammerquist Sheet Metal in Corvallis and later sold to American Sheet Metal in Portland, yes, and we did work, installation on their systems. I have some pictures —

"THE COURT: I will overrule your objections. You may answer.

"Q Now, are those the reasonable prices for those materials, Mr. Thompson?

"A Yes, they are."

The only issue properly presented by the first assignment of error is whether the court abused its discretion in overruling the objection to Thompson's testimony.[2] *Timber Structures v. C.W.S.G. Wks.*, 191 Or 231, 229 P2d 623 (1951). We find no error.

---

[2] On cross-examination Thompson revealed that he did not personally do the purchasing for this project. That was done by two Midwest employees. Woodex made no motion to strike Thompson's direct testimony concerning the reasonableness of the prices paid for materials. The facts revealed on cross-examination cannot be considered in determining whether the court erred in ruling on objections made during the direct examination. Those facts went only to the weight to be given the direct testimony. *Farmers' Bank v. Saling*, 33 Or 394, 54 P 190 (1898). Moreover, even if the issue had been appropriately raised during cross-examination, it would have been within the trial court's discretion to determine on the basis of all the testimony whether Thompson had "the requisite knowledge, training and experience to testify concerning factual observations made by himself and those working under his supervision and control." *Hwy. Comm. v. Oregon-Wash. Lbr. Co.*, 24 Or App 187, 544 P2d 1058, *rev den* (1976).

■ Woodex argues, secondly, that Midwest failed to present any competent, substantial evidence that the charges for labor and materials were reasonable. We are required to view the evidence in the light most favorable to Midwest. *Hall v. Gordon,* 284 Or 49, 584 P2d 1374 (1978). To support a claim for the reasonable value of labor and materials, one must prove that the labor and materials were actually expended for the benefit of the defendant, that the amounts of labor and materials used were reasonable and that the charge for those amounts is reasonable. *Farris v. McCracken,* 253 Or 273, 453 P2d 932 (1969); *Timber Structures v. C.W.S.G. Wks.,supra.*

■ With respect to the charge for the labor of Hayes, the testimony was as follows:

"Q Mr. Thompson, *** you also made a charge for Bob Hayes, you designated engineering and job time of 90 1/2 hours at $12 an hour?

"A That's correct.

"Q All right. Are you familiar with the charges for people of Mr. Hayes' qualifications?

"A Yes, I am.

"Q Was that a reasonable charge?

"A That's a very reasonable charge.

"Q And he expended that many hours working on this job?

"A Yes, he did."

That testimony was sufficient to support the charge for Hayes' labor, as Woodex has conceded. Viewed in the light most favorable to Midwest, it could also fairly be interpreted as establishing that both the hourly rate and the number of hours expended—the product of which is the "charge"—were reasonable.

■ With respect to the other labor charges, however, a key element of a *prima facie* case was missing. There was no evidence whatsoever that the *amount* of labor expended by Midwest employees other than Hayes was reasonable for the work done. Midwest contends that such evidence was not necessary, because there was

testimony concerning various difficulties encountered in doing the job. Although such evidence may be taken into account in determining the reasonableness of the amount of labor used, it does not obviate the need for evidence that under the circumstances the amount of labor claimed was in fact reasonable.

Included in the list of "Costs of the Woodex Job" were charges of $1,299.20 for "Neville Crane" and $421 (16 hours at $25 an hour and 42 miles at $.50 a mile) for "MIDWEST Crane." There is nothing else in the record concerning those charges—no invoices, no testimony as to reasonableness and no clarification of whether the Neville Crane charge was for labor or materials. The evidence did not support a judgment for those charges.

■ For this analysis, the materials claimed can be separated into three categories: (1) two airlocks and a fan that were purchased by Midwest already assembled; (2) steel and fasteners used to fabricate parts for the system; and (3) previously fabricated ductwork from Midwest's stock. All three categories were included in the document headed "Costs of Woodex Job," and Thompson testified that all were "used in the Woodex job."

Invoices were produced for all materials purchased specifically for the project (categories (1) and (2)). Thompson's testimony, *supra,* pp 2-4, was that the prices paid for those materials were reasonable. *Cf. Farris v. McCracken, supra.* He also testified that a 10 percent handling charge was customary and reasonable. The only remaining question with respect to the first two categories, therefore, is whether there was evidence that the types and amounts of materials used were reasonably necessary. There was no testimony specifically on that point.

The system depicted in the sketch and requested by Woodex included two airlocks and a fan of specified sizes. Where one specifically requests another to install particular items, it would make no sense to

[681]

require additional evidence of necessity in order to recover the reasonable value of those items. In this instance, the airlocks which were actually installed were larger than those specified in the sketch, but Thompson testified that Midwest checked with several suppliers and that those were the only suitable airlocks immediately available. He further explained that they were purchased because Midwest had been told that replacement of the cyclone was to be done as quickly as possible. The evidence was sufficient to support the charges for the airlocks and fan. On the other hand, Midwest failed to make a *prima facie* case with respect to the steel and fasteners used in fabrication, because there was no evidence those materials were reasonably necessary to do the job agreed on.

We question whether Thompson's testimony, *supra* pp 2-4, could reasonably be taken as covering the materials already in Midwest's stock. There are no invoices for those items or the raw materials that went into them. Nor is there any explanation of the basis for the 25 cents per pound charge for them. Assuming that Thompson's testimony could be taken to include the materials in Midwest's stock, as well as those purchased specifically for the project, the evidence nonetheless does not support an award for those materials. There was no evidence that they were reasonably necessary. The fact that they were actually used is not sufficient. The sketch did not specifically provide for those items, as it did for the fan and airlocks. Without evidence that the utilization of those materials was reasonably necessary, no award for them was justified. *Farris v. McCracken, supra.*

There was evidence to support an award only for Hayes' labor and for the airlocks and fan (including a handling charge for those materials). If the court had made specific findings with respect to each item included in its award, we could simply subtract the amounts for the items not supported by the evidence. In light of the general, undetailed award, that is not

possible. Nevertheless, it is not necessary to remand for a new trial. Both parties had a full opportunity to present evidence in regard to each of the claimed items. All the evidence necessary for a determination of a proper award is in the record. It is therefore appropriate to remand the matter to the trial court for findings as to the amounts to be awarded for those items properly supported by the evidence and to enter a judgment in accordance with those findings. *See Andersen v. Waco Scaffold & Equip.,* 259 Or 100, 485 P2d 1091 (1971).

Judgment vacated; case remanded for further proceedings and entry of a judgment consistent with this opinion.