651 P.2d 938

**DESERT IRRIGATION CO., INC., an Idaho corporation, Plaintiff-Respondent,**

v.

**Warren TOLMIE and Irene Tolmie, husband and wife; Jack G. Harris and Helen Harris, husband and wife; Thomas J. Bulgin and Marie S. Bulgin, husband and wife; Johnny Callaway and Charlene Callaway, husband and wife; and Water User's Association of the Carlsen Lateral, Inc., an Idaho corporation, Defendants-Appellants.**

No. 13552.

Court of Appeals of Idaho.

Aug. 3, 1982.

Rehearing Denied Sept. 20, 1982.

Petition for Review Granted
Nov. 30, 1982.

Daniel T. Eismann, Homedale, for defendants-appellants.

John K. Gatchel and Stephen C. Batt of Gatchel & Batt, Payette, for plaintiff-respondent.

SWANSTROM, Judge.

Desert Irrigation brought suit in the district court upon written and oral contracts to collect money claimed to be due for the construction of irrigation pipelines for defendants. Defendants counterclaimed for crop losses and other damages allegedly due to completion delays and faulty construction. Following a jury trial, judgment was entered in favor of Desert Irrigation on its claims against each defendant. Defendants contend that with respect to each contract, Desert Irrigation was required to prove the value of the services performed and failed to do so. Defendants have appealed from the judgment, asserting error in the trial court's refusal to grant defendants' motion for a directed verdict at the end of Desert Irrigation's case-in-chief and at the close of trial. We affirm in part and reverse in part.

In February, 1976, Desert Irrigation entered into a written contract with defendant, Water User's Association of the Carlsen Lateral, to construct an underground irrigation pipeline known as the Carlsen Lateral for the benefit of the Association. The contract recited that the pipeline was to be installed "according to the specifications furnished or to be furnished to [Desert Irrigation] by [the Association] ... said specifications to include all engineering and other requirements as [the Association] may elect." Mr. Looney, president and owner of Desert Irrigation, testified that the officers of the Association furnished him with specifications and a materials worksheet for the Carlsen Lateral which came from the "A.S. C.S." office. Mr. Looney testified he furnished the Association with an estimate of the cost of the project, but it was not produced at trial, nor was the amount of it shown by the evidence. He testified further that after the route of the pipeline was staked on the ground some of the defendants and other landowners requested changes in the location of parts of the line and fixtures. These changes were agreed to and approved after the written contract between Desert Irrigation and the Association was signed. The contract did not specify the price for which the work was to be done. It merely said Desert Irrigation was to be paid "a sum not exceeding $25,000.00 for the installation of said pipe line." The sum of $4,000 was paid in January, 1976, and the balance was to be paid upon completion and "upon submission ... of a final invoice showing the precise amount due, not to exceed $25,000.00 total as aforesaid."

While work was getting underway on the Carlsen Lateral for the Association, the other defendants, the Tolmies, the Harrises, the Bulgins, and the Callaways, each entered into separate oral agreements with Desert Irrigation for Desert Irrigation to construct underground pipelines leading off of the Carlsen Lateral onto those defendants' lands. There was no evidence that any of the oral contracts specified the price for the work to be done although Mr. Looney testified he furnished each defendant with an estimate. The written estimate he furnished to the Tolmies was introduced into evidence. After Desert Irrigation finished its work on the various projects, Mr. Looney presented all of the defendants with billings. The Association was billed a total of $25,987.42, with a $4,000 credit for a payment made at the start of construction.[1] The Tolmies were billed $3,755.22. The Callaways were billed $1,408.48, less $839 credit given for labor contributed to the project by Mr. Callaway. The Bulgins were

---

1. After this controversy arose the Association paid $9,330.17 to a supplier who had furnished pipe for the project to Desert Irrigation. During a pretrial conference it was stipulated that Desert Irrigation's claim would be reduced by this amount.

billed $435.08. The Harrises were billed $3,027.49.

Throughout the trial Desert Irrigation contended it had a contract to construct the Carlsen Lateral for a price of $25,000. Desert Irrigation alleged the price was exceeded because of changes requested by defendants. The defendants contended no set price was agreed to with any of the contracts, but that, in each case, Desert Irrigation was to be paid the reasonable value of the work and services performed up to the maximum of $25,000. At the close of Desert Irrigation's case-in-chief, and again at the close of all of the evidence, all defendants moved for a directed verdict under I.R.C.P. 50(a), on the ground that Desert Irrigation's evidence failed to prove the reasonable value of work done for each defendant. The trial court correctly ruled that Desert Irrigation had the burden to show what was furnished both in labor and materials, and what was reasonable as far as the value of the materials and labor furnished. *See Traylor v. Henkels & McCoy, Inc.,* 99 Idaho 560, 562, 585 P.2d 970, 972 (1978); *Peavey v. Pellandini,* 97 Idaho 655, 659–60, 551 P.2d 610, 614–15 (1976); and *Weber v. Eastern Idaho Packing Corp., Inc.,* 94 Idaho 694, 697, 496 P.2d 693, 696 (1972); *overruled on other grounds, Pierson v. Sewell,* 97 Idaho 38, 539 P.2d 590 (1975).

■ In *Smith v. Great Basin Grain Co.,* 98 Idaho 266, 561 P.2d 1299 (1977), the court stated:

> On a motion for directed verdict pursuant to I.R.C.P. 50(a) or for judgment notwithstanding the verdict, pursuant to I.R.C.P. 50(b), the moving party admits the truth of the adverse evidence and every inference that may be legitimately drawn therefrom. . . . Neither motion should be granted if there is substantial evidence to justify submitting the case to the jury or to support the verdict once it has been returned. *Barlow v. International Harvester Co.,* 95 Idaho 881, 886, 522 P.2d 1102, 1107 (1974); *Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 736, 518 P.2d 1194, 1198 (1974).

98 Idaho at 274, 561 P.2d at 1307. *See also Curtis v. Dewey,* 93 Idaho 847, 848, 475 P.2d 808, 809 (1970). The substantial evidence test requires only that the plaintiff produce "sufficient evidence (not a mere scintilla) from which reasonable minds *could* conclude that a verdict in favor of the plaintiff was proper." (Emphasis added.) *Gmeiner v. Yacte,* 100 Idaho 1, 4, 592 P.2d 57, 60 (1979); *Mann v. Safeway Stores, Inc., supra.*

■ Each of the bills submitted to each defendant by Desert Irrigation listed in detail the pipe and fittings billed to that defendant, with a charge for each item or a unit charge. The labor charge for each job was a lump sum figure, which did not disclose the hours worked or the services performed or the hourly rate. There was no explanation given on the billing or at trial how Desert Irrigation computed either the material charges or the labor charges. Desert Irrigation offered no evidence as to what the materials charged to the job actually cost. Mr. Looney denied on cross-examination that such charges represented either his cost or his cost plus a percentage. There was no evidence as to what the labor furnished by Desert Irrigation actually cost Desert Irrigation. During cross-examination of Mr. Looney, the defendants introduced copies of Desert Irrigation's tax forms showing that Desert Irrigation paid a total of $1,613 to six employees during the time Desert Irrigation worked on this project, not including the $839 paid Mr. Callaway. The total labor amount charged to the defendants was $7,090, which figure inferentially included Mr. Looney's own labor and services in construction of the projects.

Prior to the start of construction, Mr. Looney, on behalf of Desert Irrigation furnished the Tolmies with an estimate of the cost for laying the Tolmies' irrigation line, in the amount of $2,445. Tolmies wanted the Carlsen Lateral to take a different route through their property and wanted the locations of certain surge valves and a drain changed. These changes were agreed to and the estimate was revised to $2,612. Copies both of the original and the revised

estimates were introduced into evidence during Desert Irrigation's case-in-chief. Desert Irrigation's only witness, Mr. Looney, testified that after the Tolmies' estimate was revised to $2,612, Mr. Tolmie decided he wanted the sprinklers on his own line spaced 50 feet apart rather than the proposed 120 feet. The evidence was that this increased the number of sets of tees, risers, and valves from 10 to 22 and the labor to install them was also increased. This change is reflected in the billing the Tolmies received but is not shown in any estimate.

The fact that Mr. Tolmie received a written estimate showing the per unit or per item charge for materials to be used in the Tolmie pipeline, and an estimated figure for labor to construct that line, coupled with the fact that he then authorized Desert Irrigation to go ahead with construction, indicates that Mr. Tolmie thought the original estimate and the revised estimate were reasonable. The jury could make this inference. The jury could also consider that the final billing shows the per unit charge for the 22 sets of tees, risers, and valves was slightly less than the per unit charge contained in the earlier estimates for 10 such sets. The jury could also consider that the Tolmie estimates contained a figure of $508.80 for labor, while on the billing the labor figure was increased to $710. The jury also had Mr. Looney's testimony as to the additional work that his crew did to construct the Tolmie line with the changes desired by Mr. Tolmie. From this evidence, established during Desert Irrigation's case-in-chief, the jury could infer—by comparison of the estimates and the billing—that the charges made by Desert Irrigation to the Tolmies were reasonable. We hold that there was sufficient evidence for the case to go to the jury on the claim of Desert Irrigation against the Tolmies.

We believe Desert Irrigation did establish by reasonable inference, if not by direct evidence, that all the items of material charged to the respective jobs were used in the construction. However, there was no testimony by anyone on behalf of Desert Irrigation that the amount charged for materials and labor was reasonable and necessary to accomplish each of the other jobs. Desert Irrigation put in no evidence as to the basis for any of its charges, nor as to the reasonableness of its charges. In fact, Desert Irrigation's counsel objected to efforts by the defendants' counsel to inquire into the basis of the charges for both labor and materials. When the court permitted cross-examination of Mr. Looney about the basis for the labor charges, he stated he was unable even to give an estimate of the hours spent by any of the men on any one of the jobs. He stated that the charges made for materials were neither Desert Irrigation's cost, nor cost plus some percentage. On the other hand, he testified generally as to what work was done. He explained why certain requested changes resulted in more materials and labor being required than originally estimated, but he was unable to detail—even approximately—the number of additional hours of labor, or the additional labor cost to Desert Irrigation resulting from the changes. During the defendants' case-in-chief the only evidence presented by them that the charges were unreasonable was presented through the testimony of one employee of Desert Irrigation. This witness stated that the workers were not always kept busy and sometimes they had to go look for Mr. Looney in town to find out what the workers were to do next.

Mr. Looney testified that he also furnished estimates to the Association, to Harris, to Bulgin, and to Callaway. These estimates were not produced at trial, neither are the amounts of such estimates in the record. The fact that such estimates were given provides no evidence of reasonableness of the charges made in this case to these defendants.

While Desert Irrigation and the Association had an express contract, which recited that Desert Irrigation would be paid a sum not to exceed $25,000, from that we cannot infer that the bill submitted by Desert Irrigation to the Association for $25,987.42 is reasonable. There was no testimony as to how the $25,000 was arrived at, or what

items of work it included. The $25,000 figure in the written contract was not the contract price agreed to by the parties, it was the ceiling price. We hold that the contract limit of $25,000 does not provide evidence of the reasonableness of Desert Irrigation's charges. In support of an opposite holding, Desert Irrigation has cited *Mills v. Sharpe,* 272 P.2d 641 (Colo.1954), and *Lorang v. Flathead Commercial Co.,* 112 Mont. 146, 119 P.2d 273 (1941). Because the factual situations in these two cases are so different from the present case, we do not consider them persuasive.

■ Desert Irrigation had the burden to prove that the amount of labor and material used was reasonable for each job performed, and that the charges made in each claim for these amounts was reasonable. *Weber v. Eastern Idaho Packing Corp. Inc., supra; Nagele v. Miller,* 73 Idaho 441, 253 P.2d 233 (1953); *Grau v. Mitchell,* 156 Colo. 111, 397 P.2d 488 (1964); *Midwest Fabrication, Inc. v. Woodex, Inc.,* 40 Or.App. 675, 596 P.2d 581 (1979).

In *Midwest Fabrication* the Oregon Court of Appeals said:

> To support a claim for the reasonable value of labor and materials, one must prove that the labor and materials were actually expended for the benefit of the defendant, that the amounts of labor and materials used were reasonable and that the charge for those amounts is reasonable. *Farris v. McCracken,* 253 Or. 273, 453 P.2d 932 (1969); *Timber Structures v. C. W. S. G. Wks.,* [191 Ore. 231, 229 P.2d 623 (1951)]

596 P.2d at 583.

We hold that Desert Irrigation produced no evidence upon which the jury could conclude, without speculation, that the amounts billed by Desert Irrigation to the Association, to Harris, to Bulgin, and to Callaway for labor and materials were reasonable. We reverse the judgment as to these defendants, and remand to the district court for entry of a judgment consistent with this opinion. We affirm the judgment as to the Tolmies. With the exception of the Tolmies, appellants are awarded costs.

WALTERS, C. J., concurs.

BURNETT, Judge, dissenting in part.

I concur in the majority's disposition of issues related to the oral agreements between Desert Irrigation and the individual property owners. However, I respectfully disagree with the majority's determination that a directed verdict should have been entered against Desert Irrigation on its written contract with the Water Users Association. In my view, Desert Irrigation made a prima facie case for recovering the maximum sum specified in the written contract. Alternatively, I believe the evidence of reasonable value of labor and materials furnished was sufficient to withstand a motion for directed verdict.

In general, a person who performs work may claim compensation under an express contract, a contract implied in fact, or a contract implied in law ("quasi-contract"). If there is an express contract, its provision for compensation is binding. However, if the contract is silent on compensation, or if the contract is not fully performed as a result of circumstances which do not bar recovery entirely, then the measure of compensation is the reasonable value of labor and materials actually furnished. *E.g., Peavey v. Pellandini,* 97 Idaho 655, 551 P.2d 610 (1976); *Julian v. Kiefer,* 382 S.W.2d 723 (Mo.Ct.App.1964).

This case presents facts that do not squarely fit the pattern, but which fall within the penumbra, of these general rules. There was an express contract in this case. It was not silent on compensation. It provided for payment of a "sum not exceeding $25,000.00" when Desert Irrigation completed the work and submitted a "final invoice showing the precise amount due, not to exceed $25,000.00 total as aforesaid." When Desert Irrigation completed the work, it submitted a final invoice showing the precise amount due. The invoice itemized the labor and materials charged on the job. However, a dispute arose over claims for adjustment to the $25,000.00 fig-

ure. The invoice exceeded the $25,000.00 ceiling by $987.42, which Desert Irrigation attributed to work changes orally requested by the Association. The Association, in its answer to Desert Irrigation's complaint, admitted the contract but counterclaimed to recover for alleged delays or deficiencies in the work. A jury weighed these conflicting claims, and found that Desert Irrigation was entitled to $22,999.35 (including payments received or applied while work was in progress). On appeal, the Association does not contest the verdict directly. Rather, it argues that Desert Irrigation had not established a prima facie case for any recovery under the contract, when motions for directed verdict were made at trial.

As noted by the majority, one who seeks to recover the reasonable value of labor and materials has the burden of proving such value. However, by applying this principle without qualification to the instant case, the majority implicitly equates the case to one in which there was either no express contract, a contract silent on compensation, or a failure fully to perform the contract. I do not believe the case could have been so characterized when a motion for directed verdict was filed at conclusion of Desert Irrigation's case-in-chief. At that time, the evidence disclosed an express contract, work fully performed, and an itemized final invoice stating a figure consistent with the contract (with alleged oral modifications). If the evidence were accepted, the literal requirements of the express contract had been fulfilled. The evidence was sufficient, when the motion for directed verdict was made, to establish a prima facie case for recovery of the maximum figure provided in the express contract.

At the completion of all evidence, the Association again moved for a directed verdict. At that time the record included evidence showing delays or deficiencies as alleged in the Association's counterclaim. Such evidence, if believed, would have put this case in the category where an express contract existed but had not been fully performed. In such a case, Desert Irrigation's claim would have been limited to the reasonable value of labor and materials actual-

ly furnished; and Desert Irrigation would have had the burden of proving such value. However, the Association's proof of delays or deficiencies was disputed by Desert Irrigation. Ultimately, the jury resolved the conflict, largely in the Association's favor, by finding that Desert Irrigation was entitled to less than it claimed under the written contract. But the district court, when considering the Association's second motion for directed verdict, was in no position to weigh conflicting evidence. It would have been improper to take from the jury Desert Irrigation's claim for the maximum contract compensation. As stated by the majority, the district court was bound to accept Desert Irrigation's evidence as true, and to accord it the benefit of all legitimate inferences, in passing upon each motion for directed verdict.

Even if Desert Irrigation's case had been narrowed to a claim for reasonable value, the record contained substantial evidence on this issue. It is well settled that the compensation agreed upon by the parties is some evidence of reasonable value. *E.g., Ferrier v. Commercial Steel Corp.,* 142 Cal. App.2d 424, 298 P.2d 555 (1956); *Grether v. Di Franco,* 178 S.W.2d 469 (Mo.Ct.App. 1944); *Paschall & Gresham v. Gilliss,* 113 Va. 643, 75 S.E. 220 (1912). In my view, a maximum figure set forth in a contract should also be accorded evidentiary weight. It would, in any event, impose a ceiling upon the available recovery for work done pursuant to the contract. *See* cases cited in 98 C.J.S. Work and Labor § 66(1), p. 824 (1957 & Supp.1981). I believe an agreed ceiling on compensation is some evidence of what the parties themselves deemed reasonable. Moreover, Desert Irrigation's representative testified that his company had installed twenty-five to thirty water delivery systems similar to the one in question here. I believe the jury could have drawn legitimate inferences from this testimony, that the figure of $25,000.00 was negotiated in light of such experience and that it would have constituted reasonable compensation for labor and materials furnished in full performance of the contract.

In sum, the evidence was thin. I do not believe that any single component of the evidence, or any isolated inference, was sufficient to defeat a motion for directed verdict. But the evidence and inferences, taken together, in my view, were substantial enough to take the case to a jury.

I conclude that a directed verdict, against recovery of the maximum contract figure or of the reasonable value of labor and materials furnished, would have been inappropriate on the record before the district court. I would not disturb the jury's verdict, or the judgment of the district court, concerning the written contract.