675 P.2d 338

**DESERT IRRIGATION CO., INC., an Idaho corporation, Plaintiff-respondent,**

v.

**Warren TOLMIE and Irene Tolmie, husband and wife; Jack G. Harris and Helen Harris, husband and wife; Thomas J. Bulgin and Marie Bulgin, husband and wife; Johnny Callaway and Charlene Callaway, husband and wife; and Water Users Association of the Carlsen Lateral, Inc., an Idaho corporation, Defendants-appellants.**

No. 14823.

Supreme Court of Idaho.

Dec. 2, 1983.

Rehearing Denied Feb. 9, 1984.

Daniel T. Eismann, Homedale, for defendants-appellants.

Stephen C. Batt, of Gatchel & Batt, Payette, for plaintiff-respondent.

PER CURIAM:

Defendant, Water Users Association of Carlsen Lateral, Inc., contracted with plaintiff, Desert Irrigation Co., Inc., to construct a main irrigation pipeline. The written contract provided that the plaintiff be paid "a sum not exceeding $25,000" upon completion and final billing. Completion was to be "not later than the commencement of the irrigation season of 1976 ...." Individual defendants, who are also members of the association, contracted separately with plaintiff to construct other secondary pipelines. No price was agreed to in those contracts, which were oral, although estimates were given.

A dispute arose between the parties when the final billing given for the main irrigation pipeline was $25,987, exceeding the $25,000 limit in the contract. Defendant association further contended the project was not completed on time, alleged-ly causing damage to crops from lack of water. Defendants refused to pay, claiming the problems were caused by poor workmanship and poor project supervision on behalf of the plaintiff. Plaintiff claims the delays were caused by changes in the route and materials required by defendants after the agreements were entered into. Eventually a total of $13,330 was paid toward the construction of the main line, but no payments were made on the oral contracts for the secondary pipelines. Desert Irrigation brought this suit to collect the remaining amounts billed.

At trial, after the plaintiff had presented its case in chief, the defendants moved for directed verdicts claiming plaintiff had not proved the reasonable value of materials and labor. The trial court considered plaintiff's evidence "a pretty thin showing," but nevertheless denied the defendants' motions for directed verdicts. The jury returned verdicts in favor of the plaintiff.

On appeal, this case was assigned to the Court of Appeals which reversed the judgments against all the defendants except the Tolmies, holding that no substantial evidence proving the reasonable value of materials and labors was in the record except as to the Tolmies. *Desert Irrigation Co., Inc. v. Tolmie*, 103 Idaho 673, 651 P.2d 938 (Ct.App.1983).

We granted a petition for review of the Court of Appeals decision, and after briefing and reargument we are of the opinion that the Court of Appeals decision is correct for the reasons set out therein.

The judgment of the district court is affirmed in part and reversed in part. Costs on appeal to defendant appellants. No attorney fees.

BISTLINE, Justice, dissenting.

Twelve jurors, the trial judge, and Judge Burnett have sided with Desert Irrigation. I join that group. The other group takes the position that it was error on the part of Judge Doolittle to not have granted a directed verdict.

In Judge Burnett's opinion, he correctly points to the error in the Court of Appeals' opinion which "equates the case to one in which there was either no express contract, a contract silent on compensation, or a failure to perform the contract." *Desert Irrigation v. Tolmie,* 103 Idaho 673, 678, 651 P.2d 938, 943 (1983). In my view this Court's review of the law of quantum meruit found in *Peavey v. Pellandini,* 97 Idaho 655, 551 P.2d 610 (1976), amply supports the analysis of Judge Burnett.

The contract in question did *not* provide that Desert Irrigation would be paid the reasonable value of labor and material, but upon presentation of the final invoice. It did not provide that final payment would be made when reasonable value was judicially determined. But, such is the magnificently strained interpretation given the agreement by the opinion of the Court of Appeals majority, and affirmed by a majority of this Court without arriving at any independent opinion of its own.

As noted in the Court of Appeals' opinion at p. 614, final payment by the Association was to be "upon completion and 'upon submission ... of a final invoice showing the precise amount due, not to exceed $25,000 total as aforesaid.'" 103 Idaho at 674, 651 P.2d at 939. How that provision is converted into an agreement requiring Desert Irrigation to furnish proof of the reasonable value of services and labor is beyond my comprehension. It was established that Desert Irrigation was in the business of installing irrigation pipelines; and certainly it would have a good knowledge of what its costs are in laying underground pipe. Anyone knows that included would be cost of pipe, and expenses of equipment and personnel to excavate and place the pipe. Experience teaches that it is usually arrived at so much a lineal foot. It is not unlikely that Desert Irrigation also contemplated some profit on its contracts. On the other side of the bargaining table were officers and/or members of an association who are undoubtedly somewhat familiar with such projects and the cost, and who would rather contract out the job than undertake it. Equally likely is it that in negotiations

Desert Irrigation declared a belief that it could do the job for $25,000, and that the association in turn wanted assurance that it would not cost in excess of that amount. This is a rather commonplace situation faced every day by common people, which includes jurors, although perhaps not all judges. All of the parties and participants to this agreement would certainly have some idea of the cost of pipe and the cost of equipment and labor. It is not then remarkable that a simple two and one-half page "Memorandum of Agreement" was reached and executed, setting forth the work required to be performed by Desert Irrigation, and declaring that the compensation to be paid by the association would not exceed $25,000. To this non-legalese language was added the provision that final payment would be made on submission of the final invoice, but only after the work was completed. The final invoice was required *to show only the precise amount due.* Such an invoice was presented and became an exhibit at trial. It did not exceed $25,000, and nothing whatever in that agreement required Desert Irrigation to establish the "reasonable value" of its services as a condition precedent to being paid. Jurors of common sense would certainly expect that the association in doing business with Desert Irrigation did so in the belief that Desert Irrigation would not be unreasonable. Its final invoice was in detail. The amount of footage laid is precisely computable by computing the lineal footage of the pipe. The agreement set forth no requirement that Desert Irrigation had to produce a breakdown for the use of any equipment or the personnel running it, or doing handwork. A copy of that invoice is appended hereto with a copy of the agreement. It will be noted that the two single large items are 3,140 feet of twelve inch PVC pipe at $16,058 and labor at $5,015.92—which total to $21,073.92. 1,240 feet of six inch PVC added another $1,860. The total invoice was $25,987.42, and hence by the agreement, $987.42 could not be recovered, unless, perhaps, it was for extras.

In agreeing with the views of Judge Burnett, I add that it is farfetched indeed to transform the requirement of a final invoice into a requirement that the invoice somehow had to establish how its items were reasonable. I have never seen an invoice so doing. (Has anyone?) It must also be noted that in extensive pleadings and repleadings, which included a copy of the agreement, and defense motions for summary judgment, no contention was advanced by the defendants that the requirement of a final invoice showing the precise amount due had not been met. The final pleading of the association and individual defendants sets out forty-two defenses, none of which raised any issue as to the plain language of the agreement.

Being wholly unable to subscribe to the views of the majority opinion, I dissent, endorsing the more realistic views of Judge Doolittle[1] and Judge Burnett,[2] and twelve jurors of common sense and understanding.

1. "[T]hat when you consider the whole picture, the agreement, although in a most general sense, indicates some type of a limitation of value, or value area that the parties had in mind by putting in the limitation 'not to exceed twenty-five thousand dollars': and then when he followed up and furnished these individual billings to the defendants, it's true that he still doesn't thereby explain specifically and exactly the basis for it, but at least he does itemize it. He sets forth in each claim that he—that he submitted so many feet of such and such inch pipe, and—and sets so many dollars, and that—and so much labor involved . . . ."

2. "Moreover, Desert Irrigation's representative testified that this company had installed twenty-five to thirty water delivery systems similar to the one in question here. I believe the jury could have drawn legitimate inferences from this testimony, that the figure of $25,000.00 was negotiated in light of such experience and that it would have constituted reasonable compensation for labor and materials furnished in full performance of the contract."

APPENDIX

**DESSERT IRRI**
P. O. B
PARMA, ID,
PHONE: 37.

DISTRICT COURT
Third Judicial District
Plaintiff's Exh. 8
Date 10-1-79
ADMITTED

M. _Carlsen Lateral Inc._    Date _July 12_ 19 _76_
Address _Marsing Idaho_
City _____ State _____ Zip No. _____

| | | | | | |
|---|---|---:|---:|---:|---:|
| | 3,140' 12" PVC pipe | 5 | 18 | 16,058 | 00 |
| | 40' 12" PVC pipe | 5 | 95 | 238 | 00 |
| | 18' 8" PVC pipe | 2 | 50 | 45 | 00 |
| | 1240' 6" PVC pipe | 1 | 50 | 1860 | 00 |
| | 398' 4" PVC pipe | | 65 | 258 | 70 |
| 1 | 12" Green sleeve | | | 119 | 33 |
| 1 | 12" Green 45° elbow | | | 177 | 82 |
| 1 | 12"x12"x6" Green Tee | | | 172 | 80 |
| 1 | 12 x 6 x 6 Green Cross | | | 228 | 90 |
| 2 | 12"x 2" Smith Blair Saddles | 32 | 23 | 64 | 46 |
| 2 | 12"x 4" Smith Blair Saddles | 41 | 58 | 83 | 16 |
| 6 | 4" male adapters PVC | 2 | 27 | 13 | 62 |
| 3 | 4" surge plugs | 32 | 58 | 97 | 74 |
| 3 | 2" air vents | 16 | 14 | 48 | 42 |
| 7 | 2" male adaptors | | 72 | 5 | 04 |
| 2 | 2" gate valves | 14 | 69 | 29 | 38 |
| 3 | Waste Units with keys | 15 | 36 | 46 | 08 |
| | 20' 2" PVC pipe | | 32 | 6 | 40 |
| 3 | 6" butterfly valve | 80 | 56 | 241 | 68 |
| 1 | 4" butterfly valve | 62 | 53 | 62 | 53 |
| 1 | 8" butterfly valve | | | 241 | 68 |
| 1 | 6" iron gate valve flange bolts | | | 228 | 85 |
| 1 | 8"x6" reducer PVC | | | 23 | 46 |
| 2 | 8"x 45° elbows PVC | 36 | 27 | 72 | 54 |
| 3 | 6" x45° elbows PVC | 14 | 15 | 42 | 45 |
| 1 | 3" iron gate valve | | | 28 | 52 |
| 1 | 4" 45° elbow PVC | 4 | 50 | 4 | 50 |
| 1 | 6" cap PVC | | | 10 | 38 |
| 2 | 4"x6"x4 SST | 21 | 96 | 43 | 92 |
| 2 | 2"x 90° elbows | | 98 | 1 | 96 |

FORM BR-44     Page 1

82

## DESSERT IRRIGATION INC.
P. O. BOX 653
PARMA, IDAHO 83660

PHONE _____

M. _____ Carlsen Lateral Inc. _____ Date July 12 19 76

Address: _____ Marsing, Idaho _____

City _____ State _____ Zip No. _____

| | | | | |
|---|---|---|---|---|
| 1 | 8" coupling PVC | | 14 | 23 |
| 1 | 6" coupling PVC | | 10 | 20 |
| 1 | 4" coupling PVC | | 3 | 06 |
| | P70 Painter 1 gal | | 16 | 30 |
| | 711 Cement 1 gal | | 17 | 60 |
| | Concret | | 210 | 19 |
| | culvert for valve opening | | 144 | 00 |
| | labor | | 5015 | 92 |
| | total | | 25987 | 42 |
| | credit | | 4000 | 00 |
| | balance | | 21987 | 42 |

ORM BH-44                                    Page 2

EXHIBIT 'A'

ATTACHMENT TO THIRD AMENDED COMPLAINT

MEMORANDUM OF AGREEMENT

THIS INDENTURE, Made and entered into this ____ day of January, 1976, by and between DESERT IRRIGATION CO., INC., an Idaho corporation, party of the first part, hereinafter referred to as "first party:, and WATER USER'S ASSOCIATION OF THE CARSEN LATERAL, INC., a not-for-profit Idaho corporation, party of the second part, hereinafter referred to as "second party";

WITNESSETH:

For and in consideration of the covenants and promises contained herein and the payment by second party to first party of a sum of money not to exceed $25,000.00, first party agrees as follows:

1. To install a pipe line across certain real property, particularly described in the Grants of Easements attached hereto and made a part hereof, said pipe line to be of graduated size from twelve (12) inches in diameter down to six (6) inches in diameter, according to the specifications furnished or to be furnished to first party by second party at second party's sole expense, said specifications to include all engineering and other requirements as second party may elect. The Grants of Easements attached hereto are to be provided to first party at the second party's expense with no responsibility to first party other than construction across said property described in the Grants of Easements.

2. First party agrees to install said pipe line in a workmanlike manner and agrees not to unreasonably disturb the property across which said pipe line is to be installed, with due regard for reasonable workmanlike and reasonable restoration of the surface of the property. Second party agrees to pay to first party a sum not exceeding $25,000.00 for the installation of said pipe line, to be paid as follows:

    a. The sum of $4,000.00 on or before January 10, 1976, and the balance upon the completion of said project by first party and upon submission to second party of a final invoice showing the precise amount due, not to exceed $25,000.00 total as aforesaid;

    b. Provided, that the payment to first party of the balance due on this project shall be subject to an assignment by first party to the United Pipe and Supply Company of Eugene, Oregon, in the sum of $16,058.00, which said assignment second party has agreed to and ratified;

    c. Provided further that second party shall retain the sum of $2,000.00 for a period of sixty (60) days after completion of this project to assure proper installation and operation of said pipe line.

3. Second party agrees that first party shall be given the exclusive right to install and test the pipe line after completion, and that neither second party nor any of its agents or employees will attempt to operate the pipe line system until the project has been totally completed and all control and right of control or operation relinquished to second party by first party.

4. The parties mutually agree to give all reasonable co-operation to each other during the progress of the construction of this pipeline project as may be required or desirable. The parties agree that the installation of this pipe line project shall begin as soon as is reasonably possible, weather permitting, and shall proceed expeditiously to its conclusion, which first party agrees shall be not later than the commencement of the irrigation season for 1976 on the project on which this pipe line is to be installed, approximately April 15, 1976. The parties agree that all details of the construction shall be in the discretion and the responsibility of first party and shall follow as close as is reasonably possible the requirements and specifications for the project, which are to be furnished by second party to first party. Provided, that any delays in the construction of this project, which may be occasioned by second party's delivery to first party of the engineering specifications or valid easements, shall be the sole responsibility of second party, and first party shall not be penalized therefor.

IN WITNESS WHEREOF, the parties to this Agreement have executed the same effective the day and year first above written.

Attest:

_____
Secretary

/s/_____
Secretary

FIRST PARTY:

DESERT IRRIGATION CO., INC.

By: /s/_____
President

SECOND PARTY:

Attest:

WATER USER'S ASSOCIATION OF
THE CARSEN LATERAL, INC.

By: /s/_____
President